235 N.J. Super. 311 (1989)
562 A.2d 246
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
FRANK A. BARCIA AND ALPHONSE J. SIRACUSA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1989.
Decided July 27, 1989.
*314 Before Judges KING, BRODY and SKILLMAN.
Susan W. Sciacca, Special Deputy Attorney General, Acting Assistant Prosecutor, argued the cause for appellant (John G. Holl, Acting Bergen County Prosecutor, attorney, Susan W. Sciacca, of counsel and on the brief).
Brian J. Neary argued the cause for respondent Frank A. Barcia.
Joel J. Reinfeld argued the cause for respondent Alphonse J. Siracusa.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Based upon evidence obtained after the automobile in which they were riding as passengers was stopped at a police roadblock located at an exit from the George Washington Bridge, defendants were charged with possession of a controlled dangerous substance, contrary to N.J.S.A. 24:21-20a(1); possession of a controlled dangerous substance with the intent to distribute, contrary to N.J.S.A. 24:21-19a(1); possession of narcotics paraphernalia, contrary to N.J.S.A. 24:21-47; being under the influence of a controlled dangerous substance, contrary to N.J.S.A. 24:21-20b; and being in possession of a controlled dangerous substance while in a motor vehicle, contrary to N.J.S.A. 39:4-49.1.[1] The prosecutor's office administratively terminated prosecution of the indictable offenses and proceeded solely with respect to the disorderly persons charges of possession of narcotics paraphernalia and being under the influence of a controlled dangerous substance.[2]
*315 The trial court granted defendants' motion to suppress the evidence obtained at the roadblock for the reasons expressed in a written opinion reported at 228 N.J. Super. 267. The court concluded that the roadblock violated the right to be free from unreasonable governmental seizures protected by the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution, id. at 274-286, the right to freedom of interstate travel protected by the Fifth and Fourteenth Amendments of the United States Constitution, id. at 278-281, and the Commerce Clause of the United States Constitution, id. at 286-289. We granted the State's motion for leave to appeal.
We affirm the trial court's suppression order insofar as it is based upon the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. However, we find the court's discussion of the constitutional right to travel and Commerce Clause to be superfluous and, in some respects, misleading. Therefore, we disapprove of those parts of its opinion.
The pertinent facts are set forth at length in the trial court opinion. Id. at 271-273. To briefly summarize, the Bergen County Prosecutor, in conjunction with local police officials, decided to establish roadblocks on roadways exiting from the George Washington Bridge. The stated objective of the roadblocks was to apprehend New Jersey residents who had purchased and consumed cocaine in the Washington Heights area of New York City as they were returning to New Jersey across the bridge. The police apprehended defendants in Fort Lee, several hundred yards west of where the lower level of the bridge joins New Jersey, at a roadblock conducted between 7:30 p.m. and 10:50 p.m. on Friday, September 12, 1986. The police stopped every twentieth vehicle which passed through the roadblock and required the driver to produce a license, registration and insurance card. If this initial stop revealed evidence of drugs or that the driver was under the influence of alcohol or drugs, the police detained the driver and conducted further *316 investigation. During the roadblock at which defendants were apprehended, 59 vehicles were directed from the main thoroughfare and 9 persons were arrested. The roadblock caused substantial traffic congestion on the bridge and in New York City. In fact, the trial court found that
as a result of the roadblock here under scrutiny, traffic came to a complete halt from Fort Lee, New Jersey, over the George Washington Bridge, down the West Side Highway in Manhattan to West 56th Street; from Fort Lee, New Jersey, across the George Washington Bridge, up Route 95 to Riverdale in the Bronx; and from Fort Lee, New Jersey, across the George Washington Bridge, over the top of Manhattan, down the FDR Drive, and across to the Triboro Bridge in Queens. Captain Robert Herb of the Bergen County Police Department, (at this writing the Sheriff of Bergen County), who was the highest ranking uniformed officer supervising the roadblock, testified that as a result of the roadblock here under scrutiny over one million motor vehicles came to a complete stop, in some cases for in excess of four hours, and that it was not until some hours after the roadblock in Fort Lee itself was dismantled that this traffic morass of monumental proportions unwound itself. [Id. at 280-281; emphasis in original].

I
A police roadblock resulting in the detention of the occupants of a motor vehicle constitutes a "seizure" within the meaning of the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976); State v. Kirk, 202 N.J. Super. 28, 38 (1985). Ordinarily, the police may stop a motor vehicle, even briefly, only if they have a "reasonable suspicion" that the occupants are engaged in unlawful activity. Delaware v. Prouse, supra, 440 U.S. at 663, 99 S.Ct. at 1401; United States v. Brignoni-Ponce, 422 U.S., 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); State v. Egan, 213 N.J. Super. 133, 135 (App.Div. 1986). However, a motor vehicle may be stopped without a reasonable suspicion, if a roadblock is established by supervisory police officials and the time, location and operation is reasonable and does not bear "arbitrarily or oppressively on motorists as a class." United States v. Martinez-Fuerte, supra, 428 U.S. at *317 559, 96 S.Ct. at 3083; accord State v. Kirk, supra, 202 N.J. Super. at 40-41. The validity of a roadblock, like the validity of other temporary detentions of persons for investigatory purposes, must be judged by "a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640-2641, 61 L.Ed.2d 357 (1979).
A significant factor in determining "the severity of the interference with individual liberty" resulting from a police roadblock is the extent to which it interferes with normal traffic flow. Thus, the Supreme Court noted in Martinez-Fuerte that the roadblock "involved only a brief detention of travelers," 428 U.S. at 558, 96 S.Ct. at 3083, and that "the potential interference with legitimate traffic" was "minimal." Id. at 559, 96 S.Ct. at 3083. Decisions in other states which have upheld the validity of roadblocks have also frequently relied upon the brevity of the resulting delay in vehicular traffic as one factor supporting the reasonableness of the police action. See, e.g., State v. Superior Court, Pima Cty., 143 Ariz. 45, 691 P.2d 1073, 1077 (Ariz. 1984) ("the stops lasted from five to twenty seconds"); Ingersoll v. Palmer, 43 Cal.3d 1321, 241 Cal. Rptr. 42, 59, 743 P.2d 1299, 1316 (1987) ("Minimizing the average time each motorist is detained is critical both to reducing the intrusiveness of the stop of the individual driver and to maintaining safety by avoiding traffic tie-ups."); People v. Bartley, 109 Ill.2d 273, 93 Ill.Dec. 347, 353, 486 N.E.2d 880, 886 (1985), cert. den. 475 U.S. 1068, 106 S.Ct. 1384, 89 L.Ed.2d 608 (1986) ("motorists were detained for only 15 to 20 seconds, as long as there was no need for additional questioning"); State v. Deskins, 234 Kan. 529, 673 P.2d 1174, 1185 (1983) ("The time of detention was minimal, unless violations were noted, and sufficient officers were present to assure minimum intrusion, time-wise."); Little v. State, 300 Md. 485, 479 A.2d 903, 914 (1984) ("operation of the checkpoints is suspended if traffic becomes congested" and "[t]he stops themselves last less than half a *318 minute"); Commonwealth v. Trumble, 396 Mass. 81, 483 N.E.2d 1102, 1108 (1985) ("Motorists passing through the roadblock were stopped for approximately thirty seconds."); State v. Welch, 755 S.W.2d 624, 632 (Mo. Ct. App. 1988) ("The greater number of vehicles were detained less than sixty seconds."); see also 4 LaFave, Search & Seizure, § 10.8(d) (2d ed. 1987); cf. United States v. Place, 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983) ("the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion.").
The trial court properly applied the principles set forth in Prouse, Martinez-Fuerte and Kirk in concluding that the roadblock at which defendants were apprehended "did not balance the gravity of the public's legitimate immediate law enforcement needs against the severity of the interference with individual fundamental liberties." 228 N.J. Super. at 280. The trial court's finding that the roadblock caused a "traffic morass of monumental proportions" is adequately supported by the record. See State v. Johnson, 42 N.J. 146, 162 (1964). The officer in charge of the roadblock acknowledged that it caused a traffic backup which was "more than a minimal intrusion" upon the motoring public. He attributed this backup to the fact that the roadblock was established at a time of peak travel across the bridge and that an insufficient number of officers were assigned. Indeed, even before the roadblock was conducted, he objected to scheduling it in the early evening due to his belief that most driving while under the influence occurs in the late evening or early morning and his concern that the roadblock would cause an undue backup of traffic. Therefore, we are convinced that this roadblock was not reasonably planned to cause only minimal "interference with legitimate traffic." United States v. Martinez-Fuerte, supra, 428 U.S. at 559, 96 S.Ct. at 3083.
*319 We also reject the State's argument that the detention of defendants' vehicle should be upheld because any undue delay in the movement of traffic through the roadblock did not occur until after defendants were apprehended. If a roadblock is planned and executed in a way which "[bears] arbitrarily or oppressively on motorists as a class," id. at 559, 96 S.Ct. at 3083, it is unconstitutional and any evidence obtained as a result of the roadblock must be suppressed regardless of whether a particular motor vehicle was detained for an unreasonably long period of time.

II
The conclusion that the roadblock in which defendants were apprehended violated the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution made it unnecessary for the trial court to consider whether other constitutional provisions were also violated. Nevertheless, the court concluded that the roadblock violated the right to travel protected by the Fifth and Fourteenth Amendments and the Commerce Clause. We conclude that these constitutional provisions have no pertinency to this case and that the trial court should not have relied upon them.
The right to travel is more precisely characterized as "the right to free interstate migration." Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 901, 106 S.Ct. 2317, 2319, 90 L.Ed.2d 899 (1986). Most, if not all, cases dealing with this right involve durational residency requirements for preferences or benefits extended to state residents. See, e.g., Soto-Lopez, supra (civil service employment preference for persons who were New York residents when they entered the military); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (one year residency requirement for entitlement to welfare assistance). Thus, the constitutional right to travel "has never been applied to restrictions on a person's temporary *320 movements." Reiman v. Breslin, 175 N.J. Super. 353, 363 (App.Div. 1980); see also Salorio v. Glaser, 82 N.J. 482, 513 (1980), cert. den. 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 94 (1980).
The right to interstate migration is not involved in this case. Therefore, the trial court erred in relying upon the constitutional right to travel as a basis for declaring the roadblock to be unconstitutional. Indeed, to the extent that the trial court's discussion of the right to travel suggests that a temporary detention of a motorist requires a more compelling showing of public need than other temporary detentions, it is inconsistent with the cases which recognize that an occupant of a motor vehicle has a lesser expectation of privacy and freedom of movement than a person occupying a residence or office. See, e.g., California v. Carney, 471 U.S. 386, 390-394, 105 S.Ct. 2066, 2068-2071, 85 L.Ed.2d 406 (1985); United States v. Martinez-Fuerte, supra, 428 U.S. at 561, 96 S.Ct. at 3084.
An analysis of the Commerce Clause adds nothing to this case. A state's even-handed regulation of motor vehicle traffic in a manner which reasonably promotes highway safety does not violate the Commerce Clause. See Kassel v. Consolidated Freightways Corp. of Delaware, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981). Thus, we find it difficult to conceive of a circumstance in which a roadblock could be found to satisfy the Fourth Amendment requirement of "reasonableness" and yet to impose an impermissible burden upon interstate commerce. Consequently, a roadblock located near a State's border with another state or on an interstate highway is subject to the same constitutional limitations as a roadblock on a roadway carrying purely intrastate traffic.
For the reasons previously expressed, the order suppressing the evidence obtained as a result of the roadblock on the exit from the George Washington Bridge is affirmed.
NOTES
[1] The driver of the car was arrested on the same charges, but subsequently died.
[2] The record before us does not indicate any disposition of the charges under N.J.S.A. 39:4-49.1.