237 N.J. Super. 380 (1989)
568 A.2d 86
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH DECAMERA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 1989.
Decided December 18, 1989.
*381 Before Judges PRESSLER, LONG and GRUCCIO.
Puff & Aimino, attorneys for appellant (Michael A. Aimino, on the brief).
Stephen G. Raymond, Burlington County Prosecutor, attorney for respondent (Deborah A. Siegrist, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
This case involves the constitutionality of a roadblock set up to apprehend drunk drivers. Defendant argues that State v. Kirk, 202 N.J. Super. 28 (App.Div. 1985), requires advance publicity of sobriety checkpoints. The Law Division judge, rejecting that contention, denied defendant's motion to suppress the evidence against him on the charge of drunken driving. After denial of the suppression motion, defendant pled guilty to driving while under the influence of alcohol, N.J.S.A. 39:4-50, while reserving his right to appeal the denial of the suppression motion. R. 3:5-7(d).
Defendant contends:

*382 1. The roadblock employed by the officers in the motor vehicle stop of defendant was unconstitutional, thereby mandating suppression of all evidence obtained by the officers during the stop and subsequent arrest of defendant.
2. Public policy demands that "advance publicity" be a requirement in order for a police roadblock to be upheld as constitutional.
The facts were stipulated except for those surrounding the issue of advance publicity. At the conclusion of the suppression hearing, the trial court found that there was no advance published notice of the roadblock. He also found that the checkpoint was set up pursuant to the Kirk guidelines and that the officers displayed a sign which indicated there was a sobriety checkpoint ahead. Additionally, a dozen troop cars were present. Every vehicle stopped was given a pamphlet setting forth the hazards of drinking and driving.
Preliminarily, we are compelled to note that the record is hardly a model of completeness for the challenge made,[1] nevertheless, we hold that the State's action here did not offend constitutional standards.
In Kirk, Judge King observed that a sobriety checkpoint roadblock would pass constitutional muster if it was established by a supervisory authority and targeted to a designated area at a specified time. He held that the siting of the roadblock must be based on data suggesting that it would be appropriate based on considerations of public safety and reasonable law enforcement goals. Kirk, 202 N.J. Super. at 40.
In dicta, Judge King also noted other factors, which if considered, would enhance judicial approval of the roadblock. They include:
(1) adequate warnings to avoid frightening the traveling public, (2) advance general publicity designed to deter drunken drivers from getting in cars in the first place, and (3) officially specified neutral and courteous procedures for the intercepting officers to follow when stopping drivers. [Kirk, 202 N.J. Super. at 41].
*383 In Little v. State, 300 Md. 485, 479 A.2d 903 (1984), Maryland's highest court, in approving sobriety roadblocks, observed:
A majority of courts, however, have sustained the use of roadblocks as a proper law enforcement tool. As a general rule, the constitutionality of traffic checkpoints has been upheld where: (1) the discretion of the officers in the field is carefully circumscribed by clear objective regulations established by high level administrative officials; (2) approaching drivers are given adequate warning that there is a roadblock ahead; (3) the likelihood of apprehension, fear or surprise is reduced by a display of legitimate police authority at the roadblock; and (4) vehicles are stopped on a systematic, nonrandom basis that shows drivers they are not being singled out for arbitrary reasons. [Id., at 911].
The warnings in place here and the general publicity generated by roadblocks themselves have given the public clear notice that legally circumscribed roadblocks will be a part of law enforcement. We think it wholly unnecessary and perhaps counter-productive to judicially mandate requirements other than those in Kirk as interpreted herein.
We gain further insight from Professor LaFave's observations with regard to publicity and advance warning. He says: "A sign indicating that the motorist is about to be stopped and suggesting the nature of the stop may provide advance warning of the roadblock. Furthermore, checkpoint operations usually are marked by flashing lights, police vehicles, and the presence of uniformed officers." LaFave, Search and Seizure, Vol 4 § 10.8(d) pp. 69-70. We are cognizant of the fact that some positive results might flow from advance newspaper notice of police roadblocks. It is possible that if the public was aware that there was to be a sobriety checkpoint on a particular day, but was not aware of its location, intoxicated persons might be less likely to attempt to drive. This heightened effectiveness, however, does not rise to the level of a constitutional imperative. The positive effects of publicizing both the time and the place of roadblocks would be outweighed by the detection and deterrent value of roadblocks established under the current guidelines. As the New York Court of Appeals observed in People v. Scott, 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1 (N.Y. 1984),

*384 [t]he only subjective difference between temporary and permanent checkpoints is that because its location is known in advance the latter can be avoided entirely by using a different route, but that difference is minimal as concerns anxiety, especially since a temporary checkpoint can also be avoided. Of greater importance on the other side of the equation is the fact that both the detection and deterrence purposes would be adversely affected, if not forestalled entirely, were drunk driving checkpoints required to remain in one place, the known and permanent location of the checkpoint making it easily avoidable. [Id. 483 N.Y.S.2d 649, 473 N.E.2d at 5].
We are satisfied, as are many of our sister states, that roadblocks within the general framework of Kirk with proper on-the-scene warnings comply fully with State and federal constitutional requirements. State v. Hilleshiem, 291 N.W.2d 314 (Iowa 1980) (upholding a roadblock under circumstances similar to those present in Scott, including the lack of advance publicity); State v. Martin, 145 Vt. 562, 496 A.2d 442, 448 (1985) (setting forth criteria for the proper establishment of roadblocks, such criteria not including advance notice); U.S. v. Prichard, 645 F.2d 854 (10th Cir.1981) (approving driver's license checkpoint where no prior warning was given to public); State v. Tourtillott, 289 Or. 845, 618 P.2d 423 (Oregon 1980), cert. den. 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 352 (1981) (approving game license checkpoint where no prior warning was given to the public); State v. Coccomo, 177 N.J. Super. 575 (Law Div. 1979) (upholding a sobriety checkpoint conducted without advance publicity); and Commonwealth v. McGeoghegan, 389 Mass. 137, 449 N.E.2d 349 (1983) (holding that advance notice of a roadblock is not a constitutional necessity and that the only virtue of advance notice is that it may tend to reduce surprise, fear and inconvenience).
We agree with these courts. The conviction is affirmed.
Affirmed.
NOTES
[1] The record reveals that the court was anxious to move the matter along. The sole witness was cut off by counsel and the court as he testified.