OPINION OF THE COURT
Harvey Glasser, J.
Defendant Cascarano is charged with criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), unlawful possession of marihuana (Penal Law § 221.05), operating a motor vehicle while impaired (Vehicle and Traffic Law § 1192 [1]), operating a motor vehicle while *236 intoxicated (Vehicle and Traffic Law § 1192 [3]), and operating a motor vehicle while impaired by the use of drugs (Vehicle and Traffic Law § 1192 [4]).
On April 29, 1992, a Mapp hearing was held and this court denied suppression, except as to two beer bottles. Defendant has moved to reargue her motion to suppress the evidence that was seized.[1]
At the Mapp hearing,[2] Police Officer Paul Markowitz testified that he had been assigned to an auto larceny checkpoint at Clinton and Rivington Streets for the 6:00 p.m. to 2:00 a.m. shift. He and five other officers were in uniform on foot. Each automobile that passed was stopped by Police Officer Andy McDermott, who then checked the driver’s license and the registration sticker on the windshield. If Officer McDermott felt further inquiry was necessary, the car would be pulled over and the driver would be asked to roll the window down. An officer would then speak to the driver for approximately 5 to 30 seconds.
Officer Markowitz did not initially know why Officer McDermott had pulled defendant over, until the defendant rolled her window down, when he smelled alcohol and marihuana on her breath and the smell of marihuana emanating from her Ford Bronco. Officer Markowitz then asked the defendant to walk around the car on the sidewalk. He noticed that the defendant’s eyes were bloodshot and watery, and that she swayed when she walked. Officer Markowitz then placed the defendant under arrest for driving while intoxicated. A search incident to arrest revealed that in her front pants pockets she had a silver pill box containing pills, a Sucrets box containing marihuana and three envelopes of marihuana.
Defendant Cascarano contends that the evidence seized should be suppressed because when she was stopped at the auto larceny checkpoint, the police violated her Fourth Amendment rights. First, the defendant argues, there was no checkpoint at all, but rather "an illegal attempt to have a random stop to check to see if the driver’s [sic] were licensed, and have their registration and insurance.” Further, she argues, even if it was a checkpoint, it was carried out in an unconstitutional manner.
*237 The defendant reasons that the checkpoint is improper because there was no evidence that there is a problem with stolen vehicles in the area in question, nor that the checkpoint had previously assisted in the recovery of stolen vehicles. Also, there was no testimony regarding the guidelines for the checkpoint. Moreover, the defendant alleges, a roadblock is not the least intrusive method for determining if a car is stolen, and it is not an effective way since "you can not reasonably determine whether a car is stolen or not by merely checking the registration, insurance card and clearly not by checking whether the person was driving without a license.” The defendant concludes that, in actuality, this had been a routine traffic stop to examine the paperwork of drivers, for which there must exist articulable and reasonable suspicion.
The People counter that because the defendant was afforded a full opportunity to argue her motion to suppress at the suppression hearing, she should not be afforded a second opportunity to make those arguments. In the alternative, it is contended that, due to the "voluminous numbers of automobiles which are reported stolen in New York County on a daily basis,” the police have a valid basis for setting up such a checkpoint. It is further alleged that the police acted in a nonarbitrary manner since every vehicle passing the checkpoint was stopped. Moreover, once the defendant was pulled over for a valid reason, the police were not required to ignore violations of other laws which they inadvertently discovered.
"There is * * * no question that a roadblock or checkpoint stop is a seizure within the meaning of the Fourth Amendment” (People v Scott, 63 NY2d 518, 524 [1984]; accord, People v Ingle, 36 NY2d 413 [1975]). However, "it is also true that there is only a diminished expectation of privacy in an automobile” (People v Scott, 63 NY2d, supra, at 525). In determining whether such a seizure is permissible, the deciding factor is whether the police conduct was reasonable, "which in turn requires a balancing of the State’s interest in the inquiry at issue against the individual’s interest in being free from governmental interference”. (People v John BB., 56 NY2d 482, 487 [1982].) Moreover, in making such a determination as to reasonableness, perhaps the single most important factor for the court to consider is "the degree of discretion vested in the officials” who carry out the investigation. (People v Scott, 63 NY2d, at 525; accord, People v Ingle, 36 NY2d, at 419 ["The proper balance of these competing interests (of the State to enforce laws and the individual’s to be free of governmental *238 intrusion) lies in eliminating any arbitrary element in the practice].”) "Although not controlling, the elimination of the element of arbitrariness has been identified time and again as a critical factor in determining the reasonableness of official investigative activity of an intrusive nature” (People v John BB., 56 NY2d, at 488).
This court has been unable to find any reported New York State decisions specifically addressing the constitutionality of auto larceny checkpoints. Checkpoints for other purposes have been upheld. In United States v Martinez-Fuerte (428 US 543 [1976]), the United States Supreme Court held that routine stops for brief questioning by the Border Patrol at permanent checkpoints are permissible; "[individualized suspicion [that a vehicle contains illegal aliens]” is not necessary. (Supra, at 562.) The Court further held that it is permissible "to refer motorists selectively” to a "secondary inspection area.” (Supra, at 563.) The Supreme Court emphasized that with such routine stops, "there is less room for abusive or harassing stops of individuals than there was in the case of roving-patrol stops.” (Supra, at 559.)
In Delaware v Prouse (440 US 648 [1979]), a police officer pulled an automobile over to check the driver’s license and registration. The officer did not observe any traffic violations or suspicious activity. The Supreme Court held such random spot checks to be unconstitutional, reasoning that such "standardless and unconstrained discretion is the evil the Court has discovered when in previous cases it has insisted that the discretion of the official in the field be circumscribed at least to some extent.” (Supra, at 661.) The Court explained that its holding did not prevent the States "from developing methods for spot checks that * * * do not involve the unconstrained exercise of discretion.” (Supra, at 663.) "Questioning of all oncoming traffic at roadblock-type stops” was suggested as an alternative. (Supra, at 663.)
Michigan State Police Dept, v Sitz (496 US 444 [1990]) involved a highway sobriety checkpoint at which all vehicles passing through were stopped and their drivers were examined for signs of intoxication. Where an officer detected such signs, the driver was directed to the side where the driver’s license and registration were checked and a sobriety test might be conducted. Recognizing that "[n]o one can seriously dispute the magnitude of the drunken driving problem or the States’ interest in eradicating it” (496 US, at 451), the Supreme Court held that such sobriety checkpoints do not vio *239 late the Fourth Amendment. The Court found a lack of police discretion, since the checkpoints were selected pursuant to guidelines and each approaching vehicle was stopped. (Supra, at 453.)
Using similar reasoning, the New York Court of Appeals, in People v Scott (63 NY2d 518, supra), upheld a roadblock to detect and deter intoxicated drivers, notwithstanding that the location of the roadblock would be moved several times during the 3 or 4 hours of its operation. Even the fact that the written directive of the County Sheriff "contemplated situations in which not every car would be stopped” did not prove fatal "in view of the specific nondiscriminatory pattern of selection it called for” (supra, at 526).
The instant matter involves a checkpoint to reduce the problem of auto larceny, which purpose the defendant deems to be invalid.[3] It is difficult to imagine that any resident of New York City is unaware that the City is plagued by an auto theft and vandalism crisis of epidemic proportions. It is because of precisely this awareness that most cars are now equipped with sirens that seem to sound eternally, that many cars have steering wheel locking mechanisms, and that "no radio” signs in car windows are so popular. The high automobile insurance rates and soaring automobile rental rates lend further proof that there is a serious automobile theft problem in the City of New York.
Neither is the theft of automobiles a trivial matter. For nonhomeowners, the purchase of a new car may be the single largest investment of their lives.[4]
The defendant’s argument that a checkpoint may not be the most effective means to reduce auto larceny is also not persuasive. In Michigan State Police Dept. v Sitz (supra, 496 US, at 453-454), the Supreme Court stated that: "Experts in police science might disagree over which of several methods of apprehending drunken drivers is preferable as an ideal. But *240 for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.” Similarly, this court will not second guess the wisdom of the particular plan employed as opposed to other possibilities. Moreover, apprehension of criminals is not the only valid purpose for a checkpoint. "[Deterrence by fear of apprehension” is also a "legitimate governmental purpose.” (People v Scott, supra, 63 NY2d, at 527.) Thus, the People are not required to prove that a certain number or percentage of criminals were apprehended at the checkpoint in question.
The defendant also argues that written guidelines must exist for a checkpoint to be valid. Although several of the above-cited cases involved written departmental guidelines, none of the decisions required such guidelines. The guidelines were seen as significant because they deterred arbitrariness by the police officers stationed at the checkpoint sites. Because every automobile that passed the instant auto larceny checkpoint was stopped, there was very little possibility of arbitrary conduct by the police.[5]
Because the police were permitted to stop the defendant at the checkpoint in question, the defendant’s Fourth Amendment rights were not violated when she was stopped. Consequently, when the police observed that the defendant appeared to be under the influence of drugs or alcohol, they acted properly in making a further investigation.
Accordingly, the defendant’s motion to reargue is granted, and, upon reargument, the court adheres to its prior determination denying the defendant’s motion to suppress.

. Defendant also moves to reargue the suppression of statements, which application the People oppose. However, the People withdrew their statement notice at the time of the hearing.

. Neither party has provided a transcript of the proceedings to the court.

. The defendant also argues that this was not actually an auto larceny checkpoint, but a ruse to check whether drivers were properly licensed and insured, and whether automobiles had been inspected. It should be noted that the Court of Appeals has approved of "routine traffic checks” if such stops are performed in a nonarbitrary, uniform and systematic way, such as at a roadblock. (See, People v Ingle, 36 NY2d 413, 420 [1975], supra.)

. The apprehension of those responsible for property loss and damage was deemed to be a valid purpose for a roadblock in People v John BB. (56 NY2d 482 [1982], supra), where the Court of Appeals upheld a roving roadblock in a sparsely populated area plagued by burglaries.

. The defendant does not allege that the police behaved in a discriminatory manner towards her.