745 A.2d 553 (2000)
328 N.J. Super. 205
STATE of New Jersey, Plaintiff-Appellant,
v.
Noylin FLOWERS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 2000.
Decided February 10, 2000.
*554 Gary A. Thomas, Special Deputy Attorney General, for plaintiff-appellant (Donald C. Campolo, Assistant Attorney General, Acting Essex County Prosecutor, attorney; Mr. Thomas on the brief).
John O. Goins, Union, for defendant-respondent (Goins & Goins, attorneys; Mr. John O. Goins, on the brief).
Before Judges SKILLMAN, NEWMAN and FALL.
The opinion of the court was delivered by NEWMAN, J.A.D.
On leave granted, the State appeals from an order granting defendant Noylin Flowers's motion to suppress the cocaine *555 and currency seized as a result of his evading a roadblock established to detect and deter car thefts. We now reverse.
On February 8, 1998, the Newark Police Department set up a roadblock in the area of Clinton Avenue and 18th Street in Newark. The checkpoint began operation some time after 7:00 p.m. and was staffed by ten to twelve uniformed officers in marked cars. The checkpoint was preceded by signs, cones, and flares. Lighting for the roadblock was provided by portable lights, lights from the police cars at the roadblock, as well as existing lighting in the area. In addition, there was a large, white neighborhood stabilization unit (NSU) van on the scene that served as a command post. Uniformed officers in marked vehicles were also stationed at Hopkins and 18th Street, one block north of Clinton Avenue, and at Clinton Avenue and 17th Street "to prevent anybody from trying to evade the road[block]."
At approximately 9:00 p.m., the two officers stationed at Hopkins and 18th Street, Officers Frank A. Cefalu (Officer Cefalu) and Thomas Ciccone (Officer Ciccone), observed a person in a two-door, burgundy Cavalier, later identified as defendant, proceed down South 18th Street, a one-way street, toward Clinton Avenue. The officers then observed defendant stop his vehicle before the roadblock, put the vehicle into reverse, and back up approximately fifty to 100 yards past the officers. Defendant made a K-turn and proceeded the wrong way down the one-way street for 100 to 200 yards. The officers jumped into their police vehicle, activated their lights and sirens, and chased defendant.
Defendant parked his vehicle on the side of the street, exited the vehicle, and began to walk away from the officers. As he was walking, defendant reached into his waistband and dropped a clear, plastic bag to the ground. Defendant then began to run. Officer Ciccone retrieved the plastic bag and alerted Officer Cefalu that the bag contained numerous vials of what the officer suspected was cocaine. Officer Cefalu ordered defendant to stop and chased defendant through back lots and over a barbed wire fence. Defendant was apprehended and handcuffed. Seven hundred and eight dollars was recovered from defendant's person.
Defendant was charged with third-degree possession of a controlled dangerous substance (CDS), namely cocaine, N.J.S.A. 2C:35-10a(1) (Count One); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5b(3) (Count Two); third-degree possession of CDS with intent to distribute within 1,000 feet of a school zone, N.J.S.A. 2C:35-7 (Count Three); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2a (Count Four).
Defendant filed a motion to suppress the currency and drugs seized on February 8, 1998. At the suppression hearing, the State presented two witnesses, Officer Cefalu and Lieutenant Joseph Pollaro (Lt. Pollaro). The defense presented no evidence.
Officer Cefalu testified concerning the events of February 8, 1998, specifically those leading up to the pursuit, apprehension, and arrest of defendant.
Lt. Pollaro, testified that the purpose of the roadblock was to detect stolen cars. At the time of the incident, Lt. Pollaro was the Quality of Life Supervisor for the City of Newark. As such, he assigned the officers below him to quality of life complaints within the city.
Lt. Pollaro testified that the method employed in stopping cars at the roadblock was that the officers would stop every third or fourth vehicle, not recalling the exact number used at that particular roadblock. According to Lt. Pollaro, the drivers stopped at the roadblock were asked to produce their driving credentials. If everything checked out, "they [were] sent on their way." If motor vehicle violations were uncovered, the drivers were pulled to the side of the road where summonses were issued and/or the vehicles were towed if necessary.
*556 Lt. Pollaro stated that one or two roadblocks were conducted per week in different parts of the city. Specifically, because of the "stolen car problem in that area[,]" checkpoints had been conducted within a one or two block radius of the location of the roadblock at issue in this case.
The State asserted that the roadblock was proper, arguing that the purpose of the stop was to find stolen vehicles because there had been citizen complaints in that area. According to the State, the roadblock was established by a supervisory police official, Lt. Pollaro; the time, location, and operation of the roadblock was reasonable; and there was adequate warning to motoristsflashing lights, signs, flares, and cones.
Defendant contended that the real issue was "whether or not the police officers had the right to establish this motor vehicle roadblock." Defendant asserted that the State failed to show that the roadblock was established by the "proper people" and for the "right reason." According to defendant, because Lt. Pollaro was not in charge of the police department, he did not have the requisite authority to establish the roadblock. Defendant also asserted that a roadblock cannot be established for the purpose of checking for car ownership and insurance. Defendant stressed that, although the State asserted that there had been numerous citizen complaints regarding stolen vehicles in the area, the State did not provide any documentation of complaints.
In a written decision, the motion judge rejected defendant's contention that "a roadblock designed to detect the presence of stolen cars on the highways is unconstitutional per se, because the constitutionality of roadblocks used for that purpose has not been specifically recognized by the United States Supreme Court or the courts of New Jersey[.]" The judge also rejected the idea that the State was required to show some special governmental need beyond the normal need for criminal law enforcement before a balancing test is employed to determine the validity of a roadblock.
The judge did, however, agree with defendant that the State failed to meet its burden of showing the reasonableness of the roadblock, because the State "failed to provide any empirical proof of the gravity of the public concerns served by the roadblock or the degree to which the roadblock advance[d] the public interest." The judge noted that the State failed to address whether the public interest could be met by less intrusive means. The judge stated that there was "no evidence of any administrative or other standards adopted for the establishment of roadblocks, procedures for their approval, or guidelines for their operation." The judge opined that, therefore, it was impossible to determine whether the roadblock was established or conducted in an arbitrary fashion.
The judge found sufficient evidence of an organized stop, conducted by uniformed officers, and utilizing the required lights, cones, and marked cars.
Although the judge recognized that this court, "when faced with a similarly sparse record, remanded the case to the trial court for supplementation of the evidence[,]" the judge did not feel as though such was necessary in this case, citing State v. Kadelak, 258 N.J.Super. 599, 613, 610 A.2d 916 (App.Div.1992). The judge decided that the State should not get a "second-bite at proving its case[,]" and entered an order suppressing the drugs and currency seized from defendant.
On appeal, the State contends that the trial judge erred in granting defendant's motion to suppress. We agree.
Generally, the police must have reasonable suspicion of unlawful activity to detain a motor vehicle and its occupants, even briefly. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979). A motor vehicle may be stopped without reasonable suspicion, however, at a roadblock established by supervisory police officials, provided *557 that the time, location, and operation of the roadblock is reasonable, and it "does not bear `arbitrarily or oppressively on motorists as a class.'" State v. Barcia, 235 N.J.Super. 311, 316, 562 A.2d 246 (App.Div.1989) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 559, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116, 1129 (1976)). The validity of the roadblock is judged by balancing the government's need for seizure against the public's right to move freely on the highways. Id. at 317, 562 A.2d 246. The burden is on the State to establish that governmental interests of sufficient importance "warrant the intrusion upon the travelling public's federal and state constitutional rights to be free of warrantless seizures." State v. Kadelak, 258 N.J.Super. 599, 613, 610 A.2d 916 (App.Div.1992); State v. Mazurek, 237 N.J.Super. 231, 236, 567 A.2d 277 (App. Div.1989) ("Because [a] roadblock is a warrantless seizure, and as such is presumed to be invalid, the State has the burden of proving its overall reasonableness and validity."), certif. denied, 121 N.J. 623, 583 A.2d 320 (1990).
Stolen vehicle checkpoints are not per se unconstitutional merely because roadblocks used for that purpose have not been specifically recognized by our courts. Checkpoints for stolen vehicles are no different from and serve comparable public purposes as motor vehicle safety checkpoints, DWI checkpoints, and random license plate look-ups which have previously been upheld. State v. Kadelak, 280 N.J.Super. 349, 375, 655 A.2d 461 (App. Div.), certif. denied, 141 N.J. 98, 660 A.2d 1197 (1995) (motor vehicle safety checkpoint); State v. Kirk, 202 N.J.Super. 28, 43, 493 A.2d 1271 (App.Div.1985) (DWI checkpoint); State v. Donis, 157 N.J. 44, 54-55, 723 A.2d 35 (1998) (random license plate look-ups). The notion that a stolen automobile checkpoint is a separate distinct checkpoint is erroneous. By its very essence, a stolen automobile checkpoint is not different from a motor vehicle credentials checkpoint which has already been upheld in Kirk, supra, 202 N.J.Super. at 43, 493 A.2d 1271 and Kadelak, supra, 280 N.J.Super. at 375, 655 A.2d 461.
Other states have also upheld "stolen vehicle" checkpoints. See, e.g., State v. Grooms, 126 N.C.App. 88, 483 S.E.2d 445, 446 (1997); People v. Herbert, 172 Misc.2d 377, 661 N.Y.S.2d 434, 435-36 (Sup.App. Term 1997); People v. Serrano, 233 A.D.2d 170, 170-71, 650 N.Y.S.2d 95, appeal denied, 89 N.Y.2d 929, 654 N.Y.S.2d 732, 677 N.E.2d 304 (1996); People v. Cascarano, 155 Misc.2d 235, 587 N.Y.S.2d 529, 531-32 (Crim.Ct.1992); State v. Bloom, 90 N.M. 192, 561 P.2d 465, 466 (1977); see also, e.g., Theresa Ludwig Kruk, Annotation, Validity of Routine Roadblocks by State or Local Police for Purpose of Discovery of Vehicular or Driving Violations, 37 A.L.R.4th 10, § 3[a] (1985 & Supp. 1999). We hold that a stolen vehicle checkpoint may be the basis for a roadblock.
In finding the roadblock unconstitutional, the motion judge stated that "the State has failed to address the issue of whether the public interest can be met by less intrusive means." According to the State, "it is impossible to contemplate a less intrusive method or a better alternative for conducting stolen vehicle checkpoints." The State asserts that any intrusion caused upon drivers by this roadblock was "extremely minimal."
Drivers who were stopped at the roadblock were asked to produce their driving credentials. If everything checked out, "they [were] sent on their way." If motor vehicle violations were uncovered, the drivers were pulled to the side of the road where summonses were issued and/or the vehicles were towed if necessary. The intrusion was minimal.
Moreover, the State was not required to show a less intrusive means to address the problem of ferreting out and deterring stolen automobiles. As we said in Kadelak, supra, 280 N.J.Super. at 372, 655 A.2d 461:

*558 The appropriate question is not whether a particular method is the best alternative or even whether it is a better alternative, but, rather, whether the method chosen is reasonably effective in advancing the State's interest. See Commonwealth v. Shields, 402 Mass. 162, 521 N.E.2d 987, 991-92 (1988) (noting that the majority of courts that have considered the issue have rejected the argument that the State must make a showing of "no less intrusive yet equally effective alternative").
A search is not unreasonable merely because the protection of the public might, in the abstract, have been accomplished by less intrusive means. Ibid. Therefore, the State was not required to show that a less intrusive means for advancing its interest was available in order for the roadblock to pass constitutional muster.
The State, however, was required to show that the roadblock was "carefully targeted to a designated area at a specified time and place based on data justifying the site selection for reasons of public safety and reasonably efficacious or productive law enforcement goals[.]" Kirk, supra, 202 N.J.Super. at 40-41, 493 A.2d 1271.
The State contends that it did present to the court the "uncontested" and "credible" testimony of Lt. Pollaro that there had been numerous complaints of stolen vehicles in the area where the roadblock was conducted. According to the State, Lt. Pollaro provided sufficient testimony regarding the purpose of the roadblock.
Lt. Pollaro testified that the choice of location for the roadblock was based on complaints from citizens regarding stolen vehicles in the area of Clinton Avenue and 18th Street, the South District. According to Lt. Pollaro, many of the complaints were based on information received from community groups. As the Quality of Life Supervisor for Newark, Lt. Pollaro was to address and abate "concerns and problems that the citizens in certain areas were facing[.]" According to the State, the facts presented by Lt. Pollaro, albeit not specific in terms of quantity and time, provide a sufficient basis for the decision to set up the roadblock.
The State further contends that "the problem of stolen cars in Newark is so commonplace that the Court could have even taken judicial notice of the magnitude of this problem." "`Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence, generally known within the limits of their jurisdiction.' " Palestroni v. Jacobs, 8 N.J.Super. 438, 444, 73 A.2d 89 (Bergen County Ct.) (citation omitted), rev'd on other grounds, 10 N.J.Super. 266, 77 A.2d 183 (App.Div. 1950). Under the Rules of Evidence, "specific facts and propositions of generalized knowledge which are so universally known that they cannot reasonably be the subject of dispute may be judicially noted by the court under N.J.R.E. 201(b)(1)." Biunno, Current N.J. Rules of Evidence, comment 9 on N.J.R.E. 201 (1999).
In order to determine whether judicial notice is appropriate in this case, the proper test is whether the problem of stolen vehicles in Newark is everyday knowledge in that jurisdiction so that everyone of average intelligence and knowledge of things can be presumed to know it, and it is certain and indisputable. James Mitchell, Inc. v. Kreuger's Unknown Executors, 10 N.J. Misc. 1176, 1180, 163 A. 10 (Cir.Ct. 1932). As far back as 1970, it was stated, "This court can take judicial notice of the problem of stolen vehicles within this State as well as across the country." Kutner Buick, Inc. v. Strelecki, 111 N.J.Super. 89, 100, 267 A.2d 549 (Ch.Div.1970); see also Biunno, Current N.J. Rules of Evidence, comment 9 on N.J.R.E. 201 (1999) (citing Strelecki and listing the stolen vehicle problem in New Jersey and across the country as a "[p]roposition[ ] of generalized knowledge deemed to be so universally known as to be beyond reasonable dispute").
*559 Each year several reports are published listing the car theft statistics for major cities in the United States. Each year New Jersey, specifically Jersey City and Newark, ranks at the top of those lists in terms of vehicle theft rates. In 1983, a USA Today table listed New Jersey as fifth among all states in terms of the frequency of car thefts. USA Today, March 23, 1983, at 3A (cited in Berko v. Freda, 93 N.J. 81, 101 n. 6, 459 A.2d 663 (1983) (Handler, J., dissenting)). In 1989 and again in 1991, Newark was crowned the stolen car capital of the United States. The table prepared by the National Insurance Crime Bureau in 1996, ranked Newark as having had the thirteenth highest motor vehicle theft rate in the nation in 1994. The New Jersey State Police Uniform Crime Report for 1998 reveals that there were 5151 motor vehicle thefts reported in Newark in that year.
In 1992, a New York court recognized:
It is difficult to imagine that any resident of New York City is unaware that the City is plagued by an auto theft and vandalism crisis of epidemic proportions. It is because of precisely this awareness that most cars are now equipped with sirens that seem to sound eternally, that many cars have steering wheel locking mechanisms, and that "no radio" signs in car windows are so popular. The high automobile insurance rates and soaring automobile rental rates lend further proof that there is a serious automobile theft problem in the City of New York.
[Cascarano, supra, 587 N.Y.S.2d at 531-32.]
So too in Newark. In our considered judgment, the stolen vehicle problem in Newark is so well known in that jurisdiction that it is beyond reasonable dispute. Judicial notice of that fact could have been taken, thereby making it unnecessary for the State to present empirical data regarding such in order to justify the site selection for the roadblock. See Bucsi v. Longworth Bldg. & Loan Ass'n, 119 N.J.L. 120, 128, 194 A. 857 (E. & A.1937) ("It is unnecessary to cite official statistics to establish what is common knowledge throughout the... land.").
Although the stolen vehicle problem in Newark was proper for the taking of judicial notice, such notice was discretionary with the motion judge under N.J.R.E. 201(c), because the State did not raise the issue in conformity with N.J.R.E. 201(d). Under N.J.R.E. 202(b), however, we may, in our discretion, take judicial notice of any matter within N.J.R.E. 201, regardless of whether the matter was judicially noticed by a trial court. "This permissive grant of power is consistent with the existing discretionary prerogative of our appellate courts to exercise original jurisdiction where necessary to the complete determination of any matter on review." Biunno, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 202 (1999). Further, this court is not required to give the parties "an opportunity to present relevant information as to the propriety of taking judicial notice of [a] matter or the tenor of the matter to be noticed." Ibid. (citing N.J.R.E. 202(c)).
We have no hesitancy in taking judicial notice of the stolen vehicle problem in Newark, thereby eliminating the need for empirical data on the subject.
In assessing the constitutionality of the roadblock in this case, Kirk, supra, 202 N.J.Super. at 40-41, 493 A.2d 1271, is most instructive. There, we concluded that officers simply setting up roadblocks where and when they felt like it, "without any command participation as to site, time and duration, and not based on articulated and rational law enforcement needs[,]" violates Article I, paragraph 7 of the New Jersey Constitution. Id. at 41, 493 A.2d 1271. We held that constitutional objections to a roadblock will be overcome if the following three criteria are met: (1) establishment of the roadblock by command authority; (2) careful targeting of a designated area at a specified time and place, based upon data justifying the site selection; and (3) adequate warnings to the public near the site *560 of the roadblock, together with advance general publicity, and neutral, courteous procedures. Id. at 40-41, 493 A.2d 1271. We also enumerated other factors to be considered in determining the constitutionality of a roadblock which included:
(1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test.
[Id. at 46, 493 A.2d 1271 (quoting State v. Deskins, 234 Kan. 529, 673 P.2d 1174, 1185 (1983)).]
In State v. DeCamera, 237 N.J.Super. 380, 383, 568 A.2d 86 (App.Div.1989), we determined that advanced publicity is not a prerequisite to the validity of a roadblock. Ibid. (finding it "wholly unnecessary and perhaps counter-productive to judicially mandate" advance newspaper notice of police roadblocks). In State v. Moskal, 246 N.J.Super. 12, 19, 586 A.2d 845 (App.Div.1991), we stated that "[a]ll that is necessary within the State v. Kirk framework are the proper on-the-scene warnings (a sign stating that the motorist is about to be stopped and the nature of the stop, flashing lights, police vehicles and uniformed officers) to comply fully with State and Federal constitutional requirements." We also determined in Moskal that the State need not show that "the exact spot where a sobriety checkpoint is set up be a cause of accidents or fatalities, just that the general location provides public safety and is reasonably efficacious." Id. at 16, 586 A.2d 845. These same principles are applicable to the roadblock in this case.
The requisite "participation of command or supervisory authority" in selecting the time and place of the roadblock was met. This is not the case of officers simply setting up a roadblock where and when they felt like it, without command participation as to site, time, and duration. Kirk, supra, 202 N.J.Super. at 41, 493 A.2d 1271. Nor is this case similar to State v. Egan, 213 N.J.Super. 133, 135-36, 516 A.2d 1115 (App.Div.1986), where the roadblock was established by one of six sergeants in the police department who was the ranking supervisor in charge of the department that night. Here, the roadblock was established by Lt. Pollaro who, at the time, was the Quality of Life Supervisor for the City of Newark and was responsible for addressing citizen complaints.
The main concern in Kirk, the control of the discretion of the officers in the field, was also satisfied here. Officers in the field stopped vehicles based upon a predetermined selection criteria established by Lt. Pollaro. The checkpoint was conducted during a non-rush hour time, thereby accommodating the convenience of motorists. See Kadelak, 280 N.J.Super. at 376, 655 A.2d 461 ("The motorists' convenience and welfare were accommodated by the scheduling of the checkpoint during non-rush hour time periods, and enforcement officers used ample physical area to allow for the safe stopping and inspection of vehicles."). The duration of a motorist's encounter with police officers was minimal. There were sufficient on-the-scene warnings, including signs, cones, flares, marked cars, uniformed officers, and a NSU van.
The roadblock employed "officially specified neutral and courteous procedures for the intercepting officers to follow when stopping drivers." Kirk, supra, 202 N.J.Super. at 41, 493 A.2d 1271. The drivers were asked to produce their license, *561 registration, and proof of insurance. If motor vehicle violations were discovered, the drivers were pulled to the side of the road where summonses were issued or the vehicles were towed if necessary. Thus, the officers at the roadblock were acting pursuant to a fixed plan instituted by supervisory personnel, specifically, Lt. Pollaro. This procedure satisfied constitutional requirements. See Kadelak, supra, 280 N.J.Super. at 377, 655 A.2d 461 (holding that the procedure used at the checkpoint, "which called for the stopping of every fifth vehicle and vehicles with observable violations[ ]" and in which "[v]ehicles found to have violations were routinely referred by ... inspectors to a police officer[,]" satisfied constitutional requirements).
The State also contends that the police had probable cause to stop defendant once he attempted to avoid the roadblock. See Illinois v. Wardlow, ___ U.S. ___, 120 S.Ct. 673, 674, 145 L.Ed.2d 570 (2000) (finding that defendant's unprovoked flight upon seeing police officers patrolling an area known for heavy narcotics trafficking supported reasonable suspicion that defendant was involved in criminal activity and justified stop). However, we need not address that issue because defendant committed at least one traffic violation in the presence of the officers, thereby making the stop of defendant reasonable.
Here, defendant did not make a lawful U-turn to avoid the roadblock. Rather, defendant put his car in reverse and backed up for approximately fifty to 100 yards, made a K-turn, and then drove the wrong way down a one-way street. Unlike the facts in State v. Hester, 245 N.J.Super. 75, 77-78, 584 A.2d 256 (App.Div. 1990), where the defendant made a lawful U-turn to avoid a roadblock, here, there was a sufficient reason, other than the avoidance of the roadblock, for the police to stop defendant's car. See N.J.S.A. 39:4-85.1 (One-way traffic, designation of highways for; signs); N.J.S.A. 39:4-97 (Careless driving); see also State v. Dickey, 152 N.J. 468, 475, 706 A.2d 180 (1998)("`[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'")(quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95-96 (1996)). Defendant committed at least one traffic violation in the officers' presence, which furnished the requisite probable cause to pursue defendant, leading to his arrest and the lawful seizure of the cocaine and currency.
Reversed and remanded.