STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JAMES N. GRAY, DEFENDANT-RESPONDENT.

Argued November 23, 1971—Decided December 20, 1971.

*Mr. David S. Baime,* Assistant Prosecutor, argued the cause for plaintiff-appellant (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney; *Mr. John DeCicco,* Legal Assistant, of counsel and on the brief).

*Mr. Archibald S. Alexander, Jr.* argued the cause for defendant-respondent (*Mr. Murry D. Brochin,* Assigned At-

torney; *Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher,* attorneys; *Mr. Archibald S. Alexander, Jr.* on the brief).

The opinion of the Court was delivered by

PROCTOR, J. Defendant, James N. Gray, was convicted by a jury for possession of heroin (*N. J. S. A.* 24:18–4) and possession of a revolver (*N. J. S. A.* 2A:151–41). On his appeal to the Appellate Division his sole contention was that the trial court erred in denying his pretrial motion to suppress the heroin and revolver. In an unreported opinion the Appellate Division reversed the conviction, holding that the evidence was obtained as the result of an illegal search and seizure. We granted the State's petition for certification. 58 *N. J.* 163 (1971).

The testimony presented at the suppression hearing showed that on December 11, 1968, Detectives Arnold and Marshall of the Newark Police Department were patrolling in civilian clothes in an unmarked car in the vicinity of 19th Street and Springfield Avenue in Newark. At 11:30 A.M. they noticed a 1961 gray Lincoln automobile pull up in front of a bar on Springfield Avenue. The driver, the defendant, stepped out of the car and went into the bar. He reappeared a short time later with several individuals, got back in the vehicle and drove off. At about 2:00 P.M. that day the detectives observed the same automobile in front of the same bar. As on the previous occasion, the defendant got out of the car, went into the bar and came out shortly with several individuals and drove off. Although this was the second such incident, the officers did not follow the car. Later that day at about 4:00 P.M. the officers saw the automobile for the third time parked in front of the same bar, and observed the defendant and two other individuals come out of the bar and enter the automobile. The car then drove off in the same direction as on the prior occasions. This time the officers pursued the vehicle and stopped it after it had traveled a few blocks.

Detective Arnold left the police car and approached the Lincoln on the driver's side, identified himself, and asked for the defendant's driver's license and registration. The two other persons were still in the car. As the defendant removed his gloves, the officer noticed that they were mismatched, one was brown and the other black. The brown glove, which was on the defendant's right hand, had a slit in it. The defendant put the gloves on the car seat between his legs and began searching through his pockets and wallet for the license and registration. After the defendant failed to produce the credentials, although given three or four minutes to do so, the officer told him "if you didn't have them there was no sense in looking for them." The defendant then put his wallet back into his rear pocket and the officer opened the door and ordered him out of the vehicle. At that point the defendant placed the gloves on the floor of the car. As the defendant got out the officer told him to "hold it" and held him by the arm and stopped to pick up the gloves. As the officer "went to pick the gloves up the brown glove with the slit in it, there was a brown manila envelope starting to slide out of the glove when [he] picked them up." The officer then took the defendant to the police car, where Detective Marshall had remained, and the defendant was placed in the rear seat. Arnold opened the manila envelope which he saw in the glove and found that it contained five "decks" of powder which the officer believed to be and was later found to be heroin. The defendant was then placed under formal arrest. The remaining two persons were released when the officers, after interrogating them, were satisfied that they were in no way involved in the activities of the defendant.

The officers ascertained (apparently by radio) that the license plates on the Lincoln were not those which had been issued for the vehicle. Having then obtained the keys from the defendant, Officer Marshall opened the vehicle's trunk where he found a loaded revolver underneath a pair of black pants.

In reversing, the Appellate Division held that, assuming Detective Arnold had a right to pick up the gloves for whatever purpose and thus saw the envelope, "he did not have probable cause to open it to check its contents." The court found there was nothing suspicious about the envelope; it presented no threat to the officers because it was in their possession and beyond the control of the defendant. As to the gun, the court held that it must also be suppressed as "the fruit of the poisonous tree" and because the officers were not searching the automobile for evidence of ownership when they opened the trunk and discovered the loaded revolver.

██ We reverse. The Fourth Amendment and *Article I, paragraph 7* of the New Jersey Constitution, forbid only such warrantless searches as are unreasonable. *State v. Kasabucki,* 52 *N. J.* 110, 115 (1968). We think the actions of the detectives in their search of the vehicle and seizure of the heroin and the gun were reasonable and thus permissible under the Constitutions.

The police are expressly authorized to stop motor vehicles at random and demand production of the operator's driver's license and motor vehicle registration. *N. J. S. A.* 39:3–29; *State v. Kabayama,* 98 *N. J. Super.* 85 (App. Div. 1967), *aff'd on opinion below,* 52 *N. J.* 507 (1968). Beyond this, under the circumstances here, good police work would dictate that the officers investigate the actions of the defendant. Clearly, there was an aura of suspicion surrounding his actions and his use of the automobile on the day in question. It is unusual for an automobile to stop at the same bar three times within five hours and remain there for only a few minutes on each occasion. Because of the duration of the stops, it was reasonable for the police to assume that the sole purpose of these stops was to make contact with different individuals. Of course, this would not be probable cause either to arrest the defendant or to search his vehicle. But we must remember that police officers are trained in the prevention and detection of crime. Events which would go

unnoticed by a layman ofttimes serve as an indication to the trained eye that something amiss might be taking place or is about to take place. The police would be derelict in their duties if they did not investigate such events.

When the defendant failed to produce his driver's license and a registration certificate, the officers were empowered to arrest him. *N. J. S. A.* 39:5:25. And the defendant's suspicious activities during the day, his mismatched gloves, one having a slit in it, and his furtive and unusual movement of placing the gloves on the floor just before he got out of the car, were circumstances sufficient to warrant Detective Arnold's reasonable belief that the defendant was engaged in some form of criminal activity and that the gloves and envelope may have been related to it. Therefore, the detective was justified in picking up the gloves to examine their contents. And when he saw the envelope protruding from the slit in the glove, he understandably and properly opened it to find out what was in it. It might have contained evidence, *e. g.,* documents identifying the owner, that the vehicle was stolen or of some other criminal event. Under these circumstances, we think Detective Arnold acted with probable cause and thus the heroin was not the product of an illegal search and seizure. See *State v. Hock,* 54 *N. J.* 526 (1969); *State v. Campbell,* 53 *N. J.* 230 (1969); *State v. Boykins,* 50 *N. J.* 73 (1967); *United States v. Jackson,* 429 *F. 2d* 1368 (7th Cir. 1970); *People v. Gilyard,* 124 *Ill. App. 2d* 95, 260 *N. E. 2d* 364 (1970), *cert.* denied, 402 *U. S.* 911, 91 S. Ct. 1388, 28 *L. Ed. 2d* 652 (1971).

█ It is important that we keep in mind the nature of the thing searched. The United States Supreme Court and this Court have recognized that warrantless searches of automobiles may be valid in situations which would not justify warrantless searches of homes and offices. *Chambers v. Maroney,* 399 *U. S.* 42, 48, 90 S. Ct. 1975, 26 *L. Ed. 2d* 419, 426 (1970); *Carroll v. United States,* 267 *U. S.* 132, 45 S. Ct. 280, 69 *L. Ed.* 543 (1925); *State v. Barnes,* 54 *N. J.* 1, 10 (1969), *cert. denied,* 396 *U. S.* 1029, 90 S. Ct.

580, 24 *L. Ed. 2d* 525 (1970). Because of its mobility, an automobile is high among the agencies of crime. Its usefulness to those who would violate the law cannot be denied. As Chief Justice Weintraub said in *State v. Boykins, supra*: "No discussion of crime can ignore the automobile, or the fact that the incidence of crime is hinged directly to the amount of privacy we accord it." *Id.*, 50 *N. J.* at 82.

██ There is a second basis for upholding the validity of the search and seizure of the heroin. While it is true that the defendant was not formally told he was under arrest until after the heroin was found in the envelope and the defendant had been placed in the police car, under the facts of this case the defendant was actually under arrest when, upon his failure to produce his driver's license and registration, Detective Arnold ordered him out of the car, told him to "hold it" and took him into custody. See *Henry v. United States*, 361 *U. S.* 98, 80 S. Ct. 168, 4 *L. Ed. 2d* 134 (1960); *McGee v. United States*, 270 *A. 2d* 348 (D. C. Ct. of App. 1970); *State v. Sullivan*, 65 *Wash. 2d* 47, 395 *P. 2d* 745 (1964). And, as we have previously said, such an arrest is valid. *N. J. S. A.* 39:5–25. It is well settled that pursuant to a valid arrest a police officer may search a defendant and the area within his reach to protect himself from attack, to prevent escape or to prevent destruction of the evidence or fruits of a crime. See *Chimel v. California*, 395 *U. S.* 752, 763, 89 S. Ct. 2034, 23 *L. Ed. 2d* 685, 694 (1969); *People v. Thomas*, 31 *Ill. 2d* 212, 201 *N. E. 2d* 413 (1964), *cert.* denied, 380 *U. S.* 936, 85 S. Ct. 948, 13 *L. Ed. 2d* 824 (1965). It must be remembered that when Detective Arnold ordered the defendant out of the car the two passengers, who had not yet been determined to be uninvolved, remained in the vehicle with access to its contents. The envelope might well have contained a weapon such as a blade or knife, or evidence of a crime. *Cf. Campbell, supra*, 53 *N. J.* at 238. We think under these circumstances Detective Arnold acted lawfully in opening the envelope.

It follows from what we have said above that Detective Marshall's later search of the car's trunk and the seizure of the revolver were lawful. With the discovery of the heroin the officers had probable cause to believe that a further search of the car would disclose additional evidence of crime. And even apart from the discovery of the narcotics, the search was valid for, as we have said earlier in this opinion, the police could properly infer that under the facts of this case the car was stolen or driven without the permission of the owner, and the defendant was engaged in some form of criminal activity. That inference would justify a search of the car including the trunk. The inference was bolstered when it was learned by the police before the trunk was opened that the license plates on the vehicle were fictitious.

The judgment of the Appellate Division is reversed and the judgment of conviction in the trial court is reinstated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.