163 N.J. Super. 116 (1978)
394 A.2d 365
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LUCIO W. PATINO AND GUILLERMO BARRIGA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1978.
Decided October 24, 1978.
*118 Before Judges CONFORD, PRESSLER and KING.
Mr. Thomas J. Cammarata argued the cause for appellants (Messrs. Shaljian, Cammarata & O'Connor, attorneys).
Mr. Albert G. Fredericks, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. William F. Hyland, former Attorney General of New Jersey).
The opinion of the court was delivered by KING, J.A.D.
This case presents the question of whether a police officer's observation of a small amount of marijuana on the floor in the front of an automobile, thereby justifying an arrest of the occupants on a disorderly persons charge, is sufficient to furnish probable cause to search the locked trunk of the automobile.
Defendants were indicted for possession of a substantial amount of cocaine with intent to distribute in violation of N.J.S.A. 24:21-20(a)(2) and N.J.S.A. 24:21-19(a)(1). Upon denial of their motion to suppress the evidence on the grounds of violation of their Fourth Amendment rights under the Federal Constitution, they pleaded guilty and were sentenced to indeterminate reformatory terms not to exceed five years, pursuant to a plea agreement. Defendants now appeal the trial judge's denial of their motion to suppress as evidence the cocaine found in the locked trunk. *119 Their right to appeal the adverse finding on the motion to suppress followed by a guilty plea is preserved under our practice by R. 3:5-7(d).
The pertinent facts are derived exclusively from the testimony of State Trooper Phillips, which was totally credited by the trial court. On November 10, 1976 Trooper Phillips was assigned to the Tactical Control Unit, whose principal duty was enforcement of traffic regulations. He had been a state trooper for about six years, and previously a local police officer for about the same number of years. Trooper Phillips received some brief formal training in narcotics detection at the State Police Academy.
While on routine patrol at about 4 p.m. on November 10 Phillips stopped the 1968 Chevrolet convertible occupied by the defendants on State Highway 73 in Mt. Laurel Township. No violations were observed to prompt the stop. Phillips stated, "I stopped the vehicle for a motor vehicle check, checked for license and registration." The driver immediately obeyed the trooper's direction to pull over and stop. As the trooper approached the vehicle he saw the passenger hand the driver a registration and an insurance document. The driver then handed Phillips a registration, a driver's license, and an insurance card.
While questioning the occupants about the motor vehicle documents Phillips observed "a round cylindrical clear plastic container" about six inches long and an inch in diameter half-full of green vegetation on the floor next to the front seat. Based on his experience he concluded there was marijuana in the plastic container and he asked the occupants to step out of the vehicle. At this point the officer was also concerned about which of the occupants actually owned the driver's license because neither could produce any other identification.
Phillips then arrested the defendants for possession of the marijuana "that I saw in the vehicle." He then "patted them down" for any "weapons or anything else they might have." At this point the driver, Barriga, admitted that the *120 driver's license belonged to the passenger, Patino. The car was registered in the name of Patino's sister. The trooper then seized the container of marijuana and also a hand-rolled marijuana cigarette which he had found on the floor of the front seat when he observed the container. He next tried to open the locked glove compartment. Pursuant to Phillips' order Patino unlocked the glove compartment. The trooper looked in, and found "it was absolutely empty." The trooper also searched the ashtray and under the seat. He found nothing else incriminating in the passenger area.
Finally, the trooper turned his attention to the locked trunk. Patino, pursuant to instructions, unlocked the trunk. Inside a shopping bag in the trunk the trooper found the cocaine.
When denying the motion to suppress the trial judge concluded that "once there is cause to arrest, it is the law of this state [that] he may then go ahead and search the rest of the car." The trial court's conclusion was premised on an absolute right to search the entire car incident to the arrest of the occupants for joint possession of the small amount of marijuana. (As to the marijuana, defendants were charged under a municipal court complaint with nonindictable possession of less than 25 grams, a disorderly persons offense. N.J.S.A. 24:21-20(a)(4).) The trial judge did not analyze the question in terms of the trooper's reasonable basis, if any, to believe that the locked trunk contained contraband, thereby justifying an on-the-spot warrantless search of the trunk, following a routine credentials stop, during which a small amount of marijuana was observed in open view.
This case involves the so-called automobile exception to the Warrant Clause of the Fourth Amendment, which permits the police to stop and search a moving or readily movable vehicle when they have probable cause to believe the vehicle contains criminally-related objects. The exigent circumstances for the exception are provided by the mobility of the instrumentality; the constitutional demands are tempered by the somewhat lessened expectancy of privacy in *121 one's automobile, distinguished from one's home, office or shop. See Chamber v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Yet automobiles remain within the Warrant Clause of the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The State does not seek to justify the search of the locked trunk on the basis of a consensual and knowing waiver of the federal and state constitutional rights to be free from unreasonable searches and seizures, see State v. Johnson, 68 N.J. 349 (1975), or on the grounds that the search was justified to secure destructible evidence or weapons readily accessible to the accused, and therefore lawfully incident to the arrest for possession of marijuana. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Chimel case would refute any such argument on these facts. Nor had the vehicle been lawfully impounded, arguably justifying an inventory of its contents. See South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Roberson, 156 N.J. Super. 551 (App. Div. 1978), certif. den., 77 N.J. 487 (1978); State v. McDaniel, 156 N.J. Super. 347 (App. Div. 1978); State v. Slockbower, 145 N.J. Super. 480 (App. Div. 1976), motion for leave to appeal granted, 74 N.J. 255 (1977).
Our State Supreme Court has noted in the case of a moving vehicle that "probable cause is the minimal requirement for a reasonable search permitted by the Constitution." State v. Waltz, 61 N.J. 83, 87 (1972). This elusive concept was there defined as "more than mere naked suspicion but less than legal evidence necessary to convict." Ibid. It has also been defined as a "well grounded suspicion" that a crime is being committed. State v. Burnett, 42 N.J. 377, 387 (1964). No one could suggest that the police have a right to conduct random searches of the locked trunks of motor vehicles on mere whim or guess without a reasonable belief that criminal activity is afoot. Chief Justice Taft, *122 the author of the original United States Supreme Court opinion on the "moving vehicle exception" to the Warrant Clause, Carroll v. United States, supra, stated:
Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. [267 U.S. at 153-154, 45 S.Ct. at 285] (69 L.Ed. 551-552)
This court has not until very recently considered the limits, if any, on the scope of a warrantless search of a motor vehicle. In State v. Murray, 151 N.J. Super. 300 (App. Div. 1977), certif. den. 75 N.J. 541 (1978), we ordered suppressed the product of a search of a defendant's van-type vehicle, following a stop for traffic violations, where the investigating trooper's initial observations revealed a "roach clip" and several vials containing marijuana-like residue in open view in the cab. The trooper continued to search throughout the rear area of the van, found nothing, and finally removed the driver's seat from the van. This structural dismantling of the vehicle continued and ultimately led to a concealed compartment which contained an attache case full of hashish.
Murray considered the serious question of the permissible scope and intensity of a vehicle search following the observations of small amounts of marijuana or other drug paraphernalia, in the portion of a vehicle open to public *123 view. We accepted the right of the officer under such circumstances to search the part of the vehicle available for personal occupancy, and the contents of that area. Id. at 306-307. Any further intrusion was, we concluded, constitutionally questionable. We concluded, "We are convinced, however, that when the officer, unsuccessful to that point in uncovering additional contraband, commenced interfering with the structural integrity of the vehicle itself, the search he was conducting transcended all bounds of reasonableness." Id. at 307. As we pointed out in Murray, a reasonable search, when commenced, may eventually exceed constitutional limits "by virtue of its intolerable scope and intensity." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." Ibid.
In Murray we relied on Wimberly v. Superior Court, 16 Cal.3d 557, 128 Cal. Rptr. 641, 547 P.2d 417 (Sup. Ct. 1976), a trunk search case very similar to the present situation. In Murray we made it clear that "We do not wish to be understood as forbidding all entries into the trunk area of cars being searched on a warrantless basis. Clearly in many circumstances such entries are entirely reasonable." 151 N.J. Super. at 308. If some specifically articulable facts are apparent to the officer, justifying a reasonable belief that criminally-related matter may be present in the trunk, the search may proceed. Mere hunch, or understandable professional curiosity, is not enough to justify this incremental intrusion on the expectation of privacy.
These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens *124 at the mercy of the officers' whim or caprice. [Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, 1890-1891 (1948)]
In Wimberly v. Superior Court, supra, police officers observed a weaving, speeding vehicle at 2:30 A.M. Upon stopping the vehicle police observed marijuana seeds and a pipe smelling of burnt marijuana in open view in the front seat area. The officers detected a slight odor of marijuana inside the car. They also found a small quantity of marijuana in an occupant's jacket which they had legitimately searched incident to the initial stop. The officers then used the car keys to open the trunk, where several pounds of marijuana were found.
Defendants challenged the validity of the trunk search, claiming there was no probable cause to justify the intrusion into the trunk. The state contended that the police had a right to conduct a warrantless search of the entire vehicle where there was probable cause to believe any part of it contained contraband. The California Supreme Court recognized that the trunk is a distinctly separate part of the car, in which there is reasonably greater expectation of privacy than in the passenger compartment. The court concluded, "there must be some specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk." Id., 128 Cal. Rptr. at 648, 547 P.2d at 424. The California Supreme Court rejected the State's argument "that it is inappropriate to compartmentalize a car into various divisions," stating, "[T]here is a recognized and protectible privacy interest in concealed areas of a car, and the search of a car like all other searches must be properly circumscribed to be `reasonable' within the meaning of the Fourth Amendment and Article I, Section 13, of the California Constitution." Id., 128 Cal. Rptr. 641, 547 P.2d at 426. The State of California also urged that law enforcement would be needlessly inconvenienced if the scope of automobile searches was limited to those areas of the vehicle in which the confronting officer has reasonable cause to believe *125 criminally-related matter could be found. Noting the counterbalancing inconvenience of the citizens subjected to the unjustified, and overly intense and extensive vehicle searches, the California court rejected this contention. Id. 128 Cal. Rptr. 641, 547 P.2d at 426.
With relation to the question as to whether there was probable cause to search the trunk, the Wimberly court held that the amount and kind of drugs and equipment found in the interior of the car were reasonably suggestive of only casual use by the occupants of the car, not of large quantities of additional drugs secreted in the trunk. 128 Cal. Rptr. 641, 547 P.2d at 427. There was therefore no probable cause to search the trunk. Id. 128 Cal. Rptr. 641, 547 P.2d at 427.
In basic agreement with Wimberly, which we believe strikes a proper balance between the legitimate interests of the public in preserving the privacy of a locked portion of a vehicle and the interest of law enforcement in drug arrests and prosecutions, we conclude that in the case before us Trooper Phillips had no probable cause to justify the warrantless search of the trunk of the car occupied by defendants. Simply because he found a small amount of marijuana in the passenger compartment entirely consistent with possession for personal use, did not provide him with facts that would lead a police officer of ordinary prudence to conscientiously entertain a strong suspicion that criminal contraband was present in the locked trunk. There was no prior history known to the officer of illegal conduct by these defendants; there was no erratic driving, suspicious gestures, or other incriminating activity observed. Nothing found in the interior of the passenger area or in the conduct of the occupants generated any suspicion of a drug cache in the trunk or of any personal danger to the officer. In sum, the search was purely investigatory and the seizure a product of luck and hunch, a combination of insufficient constitutional ingredients. See also Commonwealth v. White, Mass. 371 N.E.2d 777 (Sup. Jud. Ct. 1977), cert. granted, 436 U.S. 925, 98 S.Ct. 2817, 56 L.Ed.2d 767 (1978); People v. *126 Gregg, 43 Cal. App.3d 137, 117 Cal. Rptr. 496 (D. Ct. App. 1974); State v. Astalos, 160 N.J. Super. 407, 414-416 (Law Div. 1978).
Several other California appellate cases provide examples where the police did possess sufficient articulable information to justify a trunk-search. In People v. Podesto, 62 Cal. App.3d 708 (133 Cal. Rptr. 409 (D. Ct. App. 1976), police pursued a speeding vehicle for over two miles, at speeds in excess of 100 m.p.h. During the chase they observed several hundred pieces of some type of paper substance being thrown from the passenger side of the car. When the car was finally forced to stop, police observed the contents of a small bag of marijuana scattered on the rear seat and floor. On entering the car they noticed a strong odor of marijuana coming from the back portion of the car. They concluded that the small amount of marijuana discovered in open view could not account for the intensity of the odor. They lifted the back seat off its brackets and observed gunny sacks which appeared to contain marijuana bricks in the trunk. They then opened the trunk and found a large amount of marijuana. The court concluded that the small quantity and location of the marijuana found in the passenger compartment, the strong odor emanating from the trunk inconsistent therewith, the attempt to flee at speeds of over 100 m.p.h., and the disposal of possible marijuana paper out the window, were a combination of circumstances sufficient to justify a reasonable belief that the vehicle was being used to transport contraband. See also, People v. Hill, 12 Cal.3d 731, 117 Cal. Rptr. 393, 528 P.2d 1 (D. Ct. App. 1974), where it was found reasonable to assume that defendants were transporting marijuana where a desperate attempt to avoid apprehension was followed by a discovery of contraband in open view in a car.
The State contends that State v. Gray, 59 N.J. 563 (1971), and State v. Waltz, 61 N.J. 83 (1972), compel a result contrary to the one we reach here. These cases are neither factually apposite nor controlling on legal principle. In Gray the police did not search the trunk until (1) defendant *127 driver had been lawfully arrested for personally possessing heroin while driving the car, (2) police surveillance during the day of the arrest had disclosed highly suspicious activity by the defendant while using the car, suggestive of drug dealing, and (3) the police had a reasonable basis to believe the car was stolen because the defendant could not produce any driver's license or registration and the police had verified before the trunk-search that the license plates on the vehicle were fictitious. In Waltz there was no trunk search. The state police stopped a van for speeding on the New Jersey Turnpike. While questioning the two occupants of the front seat the trooper observed pills and a marijuana-like vegetation in a small bottle on the front floor of the van. The officer arrested the two occupants of the front seat and searched the rear portion of the van, discovering a third occupant, and more drugs and narcotics paraphernalia. Our Supreme Court found no impropriety in the police search of the entire van, the rear of which was occupied by a third person, who had destructible criminal evidence therein within his control. The latitude of the search in Waltz was quite reasonable. Rears of vans are frequently occupied by passengers.
We conclude that neither Gray nor Waltz is authority for the search of a locked trunk after a totally random motor vehicle stop which produces evidence of only a small amount of marijuana for personal use, a disorderly persons offense, and nothing further to enhance the officer's index of reasonable suspicion.
We further note that there is no attempt here to justify the incremental intrusion of the expectancy of privacy of motorists in locked trunks of vehicles in the situation before us on the basis of danger to the police officer during a roadside confrontation. Here Trooper Phillips legally "patted down" the defendants for weapons and completely searched the inside of the car, thus satisfying his legitimate concern for his personal safety. Considerations which may reasonably justify increased intrusions into personal privacy in order to *128 insure the safety of police officers while performing their duty are just not part of the constitutional equation in the class of case we consider here today. Cf. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331, 337-338 (1977). Our Supreme Court has recently noted as "highly significant" the recognition of a policeman's exposure to the risk of lethal harm in "the sensitive and sensible balancing of constitutional imperatives." State in the Interest of H.B., 75 N.J. 243, 249, 252 (1977). We conclude that the absence of any risk to the officer is equally significant.
We hold that under the facts apparent to him at the time of the search Trooper Phillips had no reasonable basis to suspect that the locked trunk contained criminally-related matter, such as weapons, plunder, contraband or evidence of crime. There was no justification to extend the zone of search further than the person of the occupants and the interior of the car. Therefore the fruits of the search of the locked trunk must be suppressed as they were secured in violation of the Fourth Amendment.
Reversed and remanded.