274 N.J. Super. 137 (1994)
643 A.2d 631
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERT A. JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1994.
Decided June 2, 1994.
*142 Before Judges MICHELS, KESTIN and WEFING.
George Mettler, Designated Counsel, argued the cause for appellant (Susan L. Reisner, Acting Public Defender, attorney; Mr. Mettler, of counsel and on the brief).
Stuart A. Minkowitz, Assistant Bergen County Prosecutor, argued the cause for respondent (John J. Fahy, Bergen County Prosecutor, attorney; Mr. Minkowitz, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Following a joint jury trial with co-defendants Wayne S. Murdock (Murdock) and Valecia A. Davis (Davis), defendant Albert A. Johnson was convicted of possession of cocaine in a quantity of five ounces or more with intent to distribute, a crime of the first degree, in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1) (First Count); possession of cocaine, a crime of the third degree, in violation of N.J.S.A. 2C:35-10a(1) (Second Count); resisting arrest, a crime of the fourth degree, in violation of N.J.S.A. 2C:29-2 (Fifth Count), and aggravated assault upon a law enforcement officer acting in the performance of his duties while in uniform, a crime of the third degree, in violation of N.J.S.A. 2C:12-1b(5)(a) (Sixth Count). The trial court merged defendant's conviction for possession of cocaine under the Second Count into *143 his conviction for possession of cocaine with intent to distribute under the First Count and committed defendant to the custody of the Commissioner of the Department of Corrections for fifteen years with a five-year period of parole ineligibility. The trial court also assessed a $3,000 Drug Enforcement Demand Reduction penalty, a $50 forensic laboratory fee, and a $30 Violent Crimes Compensation Board (VCCB) penalty. In addition, the trial court committed defendant to the custody of the Commissioner for a concurrent one-year term and assessed a $30 VCCB penalty for his conviction for resisting arrest under the Fifth Count, and committed defendant to a concurrent four-year term and assessed a $30 VCCB penalty for his conviction for aggravated assault under the Sixth Count. Thus, defendant was committed for concurrent terms totaling fifteen years with a five-year parole ineligibility period. Defendant appeals.
According to the State's proofs, at 1:00 a.m. on Sunday, November 4, 1990, State Troopers Kevin Maguire (Maguire) and Kevin Dunn (Dunn) observed a maroon Pontiac vehicle with Illinois license plates traveling in the left lane of Route 80 at a very high rate of speed. After pacing the vehicle for approximately one-half mile, the troopers determined that the car was traveling seventy-five miles per hour in a fifty-five mile per hour zone. The driver then applied the vehicle's brakes and cut across all lanes of travel into the right lane, as if to exit Route 80 and enter the Garden State Parkway. The troopers then signalled the vehicle to pull to the side of the road. The vehicle pulled over without attempting to evade the troopers. The area was well lit, the traffic was light, and there was no precipitation that night.
Before approaching the vehicle, the troopers radioed the police station to notify them of the stop. The troopers observed three people in the car. As the troopers got out of the patrol car, the driver of the vehicle, defendant, immediately exited the vehicle and approached the troopers. Davis was sitting in the front passenger seat and Murdock was sitting in the rear passenger seat.
*144 Defendant told Trooper Dunn that he was not speeding and that they had the wrong car. Defendant produced a valid Ohio driver's license and a rental agreement for the vehicle. Both troopers testified that defendant appeared to be nervous. Defendant, after being asked to sit on the hood of the vehicle, jumped off the hood several times, walked around, asked to go to the bathroom, constantly looked back at the two passengers in the vehicle and was sweating even though it was a cool fall night. Defendant explained that Davis was his girlfriend, Murdock was his brother, and they were coming from Queens, New York where they had been visiting relatives since Wednesday. The trooper then questioned why the vehicle had just been rented on Friday and why defendant was driving because, according to the rental agreement, only Davis and her spouse were registered as drivers. Defendant became irate with this line of questioning. Defendant then stated that Davis was his wife, but she had a different last name because of a previous marriage. Defendant also told the trooper that he was coming from Brooklyn, not Queens. The rental agreement indicated that Davis' home address was different than defendant's home address. Murdock later stated that defendant was actually married to a woman named Kim Mitchell.
Trooper Dunn then asked Murdock to exit the vehicle so he could speak to him in an effort to confirm defendant's story. Murdock explained that defendant was his brother, Davis was a friend of defendant's and they were coming from the Bronx where they had been on Friday to visit Murdock's mother. Murdock's identification indicated that he lived in the Bronx. Murdock also appeared nervous. He would not look at Trooper Dunn, but only stared at the ground the whole time.
Before Trooper Dunn had a chance to question the inconsistencies between the stories, he observed Davis in the vehicle reaching into her pocketbook with both hands while looking down at the pocketbook. Trooper Dunn ran over to the passenger's side of the vehicle, opened the door and grabbed the pocketbook. He testified that he feared that Davis was reaching for a weapon. Upon *145 grabbing the pocketbook, the trooper immediately looked inside of it, as the top of the pocketbook was open. Trooper Dunn saw a "clear, cellophane zip-lock, lunch-type baggie containing a large brick of a white crystal substance." This substance was later identified as cocaine. Trooper Dunn then ordered Davis to put her hands on the windshield and arrested her.
At that time, defendant and Murdock jumped off the hood where they had been sitting and Trooper Maguire restrained them. Trooper Dunn placed the bag on the roof of the vehicle, grabbed Murdock and told Trooper Maguire to place handcuffs on the men. Murdock resisted being handcuffed. Defendant grabbed Trooper Maguire and began punching him. The two men had a fistfight which ended when defendant finally was subdued and placed under arrest.
After defendant, Murdock and Davis were handcuffed, placed on the ground and advised of their rights, Trooper Dunn conducted an inventory search of the vehicle. He found no other suspected items, weapons or valuable possessions. Three backup police units arrived at the scene at that time. Trooper Maguire then patted down defendant, Mudock and Davis and found a "lock blade knife" in a zipper pocket in the right leg of Murdock's trousers. The three were taken to Bloomfield Police Headquarters. At the station, the officers further searched the pocketbook that had been retrieved from Davis and found another plastic sandwich bag containing a small amount of white crystal substance. This substance was later identified as cocaine. At the conclusion of the proofs the jury found defendant guilty on the First, Second, Fifth and Sixth Counts of the Indictment.[1]
Defendant appeals, seeking a reversal of his convictions, or alternatively, a modification of his sentences on the following grounds set forth in his brief:

*146 I. BY DENYING DEFENSE COUNSEL'S REQUEST TO BE RELIEVED OF HIS DUTIES, THE COURT COMMITTED A REVERSIBLE ERROR BY DENYING MR. JOHNSON HIS RIGHT TO BE ADEQUATELY REPRESENTED BY COUNSEL. (Raised Below).
II. BECAUSE OF THE FAILURE TO SEVER MR. JOHNSON FROM THE TRIAL OF THE TWO CODEFENDANTS, ALBERT JOHNSON WAS DENIED A FAIR TRIAL. (Raised Below).
III. BECAUSE THE TRIAL COURT ALLOWED INTO EVIDENCE THE FRUITS OF AN UNWARRANTED SEARCH OF THE CAR PASSENGER'S POCKETBOOK, ALBERT JOHNSON'S CONVICTION WAS BASED ON ILLEGAL EVIDENCE. (Raised Below).
IV. THE TRIAL COURT ERRED WHEN IT DISMISSED THE CASE AGAINST ONE CODEFENDANT, WAYNE MURDOCK, AND NOT AGAINST THE OTHER CODEFENDANT, ALBERT JOHNSON. (Raised Below).
V. BECAUSE THE TRIAL COURT DISMISSED THE CASE AGAINST ONE CODEFENDANT AND NOT AGAINST MR. JOHNSON, WHEN THE FACTS OF THE STATE'S CASE AGAINST THE TWO CODEFENDANTS WERE THE SAME, MR JOHNSON RECEIVED AN UNFAIR JURY TRIAL. (Raised Below).
VI. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
VII. THE IMPOSITION OF A MANDATORY MINIMUM TERM WAS NOT PROPER.
In a pro se supplemental brief, defendant raises the following issues:
I. THE JURY'S VERDICT ON THE POSSESSION AND POSSESSION WITH INTENT TO DISTRIBUTE COUNTS WAS A MISCARRIAGE OF JUSTICE.
II. IT WAS ERROR FOR THE COURT TO FAIL TO GRANT DEFENDANT'S MOTION FOR SEVERANCE.
III. THE DEFENDANT CONTENDS THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL; HAD IT NOT BEEN FOR COUNSEL'S INEFFECTIVENESS, THE TRIAL WOULD HAVE RESULTED IN A DIFFERENT VERDICT.
IV. DEFENDANTS RIGHT TO EQUAL PROTECTION WAS VIOLATED WHEN THE COURT IMPOSED DISPARATE SENTENCES UPON HIS CO-DEFENDANT AND HIM.
V. DEFENDANTS CONVICTION SHOULD BE REVERSED BECAUSE THE COURT FAILED TO ADEQUATELY CHARGE THE JURY ON ACCOMPLICE LIABILITY.
VI. THE TRIAL COURT IMPROPERLY DENIED DEFENDANTS MOTION FOR SUPPRESSION OF EVIDENCE.
*147 We have carefully considered these contentions and all the supporting arguments advanced by defendant through counsel and in his pro se supplemental brief and find that they are clearly without merit. R. 2:11-3(e)(2). However, further comment is appropriate with respect to some of these contentions.

I.
Defendant contends that the trial court erred by refusing to grant his attorney's request to be relieved as trial counsel. Therefore, defendant argues that he was denied the effective assistance of counsel. On the eve of trial, defendant's attorney sought to withdraw. The attorney informed the trial court that he had received privileged information from defendant that would prevent him from adequately representing defendant at trial, but he did not reveal the claimed privileged information. The trial court denied the motion.
R. 1:11-2, which governs the withdrawal of an attorney, states in pertinent part:
After the entry of a plea in a criminal action . .. an attorney may withdraw from the action only by leave of court on written notice to all parties.
An attorney may withdraw for justifiable and lawful cause, after giving proper notice and obtaining leave of court. Jacobs v. Pendel, 98 N.J. Super. 252, 255, 236 A.2d 888 (App.Div. 1967). An attorney seeking to withdraw "must make his application promptly for the purpose of affording his client an opportunity to obtain other counsel sufficiently in advance of the trial date as will permit reasonable preparation." Id. at 256, 236 A.2d 888.
"The granting of leave by the court is generally in the discretion of the court and depends upon such considerations as proximity of the trial date and possibility for the client to obtain other representation." Id. at 255, 236 A.2d 888. Our courts have recognized a presumption against granting a request to withdraw. State v. Biegenwald, 126 N.J. 1, 21, 594 A.2d 172 (1991); State v. Lowery, 49 N.J. 476, 489, 231 A.2d 361 (1967). When deciding whether to permit withdrawal, the trial court must balance its *148 inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice against the attorney's reasons for requesting withdrawal. Cf. State v. Furguson, 198 N.J. Super. 395, 402, 487 A.2d 730 (App.Div.), certif. denied, 101 N.J. 266, 501 A.2d 933 (1985).
We are satisfied that the trial court properly exercised its discretion in denying defendant's trial counsel's motion to withdraw on the eve of trial. Entirely apart from the fact that the attorney did not provide written notice of the motion to withdraw to all parties as required by R. 1:11-2, the motion comes too late. The motion was made on the eve of trial, after the matter had been postponed numerous times. Moreover, the attorney did not give the trial court any concrete reasons for requesting the withdrawal, but merely stated that he believed his continued representation of defendant would not provide defendant with effective assistance of counsel and he was "not at liberty to disclose the reasons for that." In our view, that was not sufficient to warrant granting the request to withdraw at this late stage of the proceedings.
Moreover, we are satisfied that the trial court's refusal to permit the attorney to withdraw did not result in a denial of effective assistance of counsel for defendant. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), the United States Supreme Court established the standard for determining whether a defendant has been denied the effective assistance of counsel. The Supreme Court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. [Strickland v. Washington, supra, 466 U.S. at 668, 104 S.Ct. at 2064, 80 L.Ed.2d at 693].
*149 See also United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
The New Jersey Supreme Court adopted this standard as the guarantee of effective assistance of counsel under the State Constitution in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). "[A] criminal defendant is entitled to the assistance of reasonably competent counsel, and ... if counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction, the constitutional right will have been violated." Ibid.
Application of these principles and a careful review of the entire record in this matter satisfies us that the defendant was represented by a competent and experienced trial attorney and was afforded the reasonable and effective assistance of counsel guaranteed him under the United States and New Jersey Constitutions. See Strickland v. Washington, supra; United States v. Cronic, supra; State v. Fritz, supra. Although the attorney should have moved for a severance prior to trial as required by R. 3:15-2(c), the trial court nonetheless permitted the attorney to argue the motion and the trial court ruled on the merits of the motion. Thus, the failure to timely move for a severance did not prejudice defendant in any way.

III.
The trial court properly denied defendant's motion for a severance of his trial from that of co-defendants Murdock and Davis. R. 3:15-2(b), which governs severance, provides:
If for any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation the court may order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief.
The decision on a motion for a severance pursuant to R. 3:15-2 is addressed to the sound discretion of the trial court. State v. Laws, 50 N.J. 159, 175, 233 A.2d 633 (1967), cert. denied, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968). In considering *150 whether a joint trial should be severed, the trial court should "balance the potential prejudice to defendant's due process rights against the State's interest in judicial efficiency." State v. Sanchez, 224 N.J. Super. 231, 245, 540 A.2d 201 (App.Div.), certif. denied, 111 N.J. 653, 546 A.2d 561 (1988) (citing State v. Coleman, 46 N.J. 16, 24, 214 A.2d 393 (1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966)). "When the crimes charged arise from the same series of acts, and when much of the same evidence is needed to prosecute each defendant, a joint trial is preferable." State v. Brown, 118 N.J. 595, 605, 573 A.2d 886 (1990) (citing Richardson v. Marsh, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176, 187 (1987)); see also State v. Moore, 113 N.J. 239, 273, 550 A.2d 117 (1988); State v. Briley, 53 N.J. 498, 503, 251 A.2d 442 (1969). The "danger by association" that underlies all joint trials is not in itself sufficient to justify a severance, and the separate status of co-defendants being jointly tried can be adequately maintained by proper jury instructions. State v. Brown, supra, 118 N.J. at 605, 573 A.2d 886; see also State v. Freeman, 64 N.J. 66, 68-69, 312 A.2d 143 (1973); State v. Engel, 249 N.J. Super. 336, 370, 592 A.2d 572 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991); State v. Morant, 241 N.J. Super. 121, 133, 574 A.2d 502 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990); State v. Scioscia, 200 N.J. Super. 28, 43, 490 A.2d 327 (App.Div.), certif. denied, 101 N.J. 277, 501 A.2d 942 (1985); State v. Bellucci, 165 N.J. Super. 294, 300-01, 398 A.2d 123 (App.Div. 1979), modified, 81 N.J. 531, 410 A.2d 666 (1980); State v. Chaney, 160 N.J. Super. 49, 66, 388 A.2d 1283 (App.Div.), certif. denied, 78 N.J. 405, 396 A.2d 592 (1978), cert. denied, 440 U.S. 922, 99 S.Ct. 1250, 59 L.Ed.2d 475 (1979).
Moreover, in determining whether to grant a severance where there is a claim of antagonistic defenses, our Supreme Court in State v. Brown, supra, explained:
Courts have generally held that defendants cannot be tried together fairly when their defenses are antagonistic and mutually exclusive or irreconcilable. The test for granting severance, however, is a rigorous one. Separate trials are required only when defendants "present defenses that are antagonistic at their core." *151 United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir.1981). The mere existence of hostility, conflict, or antagonism between defendants is not enough.
Determination of central or core antagonism necessarily focuses on the mutual exclusivity of defenses. "Mutual exclusivity" demands that the jury's universe of choices be limited to two: the jury can believe only either one defendant or the other. The prosecutor's theory of the case, and the defenses themselves, must force the jury to choose between the defendants' conflicting accounts and to find only one defendant guilty. "When ... the jury can reasonably accept the core of the defense offered by either defendant only if it rejects the core of the defense offered by his co-defendant, the defenses are sufficiently antagonistic to mandate separate trials." State v. Vinal, 198 Conn. 644, 652, 504 A.2d 1364, 1368 (1986). If the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or, indeed, believing both completely, the defenses are not mutually exclusive. Defenses that do not demand that the jury choose one or the other in order to return a verdict, though clearly in conflict and antagonistic, are not mutually exclusive. See State v. Sanchez, supra, 224 N.J. Super. at 247-48, 540 A.2d 201. [118 N.J. at 605-06, 573 A.2d 886].
See also United States v. Bautista, 731 F.2d 97, 99-100 (1st Cir.1984); State v. Morant, supra, 241 N.J. Super. at 133, 574 A.2d 502.
"The fact that one defendant seeks to escape conviction by placing guilt on his or her co-defendant has not been considered sufficient grounds for severance." State v. Brown, supra, 118 N.J. at 606, 573 A.2d 886. Finally, and perhaps most importantly, a defendant does not have a right to severance simply because the defendant believes that a separate trial "would offer defendant a better chance of acquittal." State v. Morales, 138 N.J. Super. 225, 231, 350 A.2d 492 (App.Div. 1975); see also State v. Barrett, 220 N.J. Super. 308, 311, 531 A.2d 1368 (Law Div. 1987), aff'd in part, rev'd in part by State v. Morant, 241 N.J. Super. 121, 574 A.2d 502 (App.Div.), certif. denied, 127 N.J. 323, 604 A.2d 598 (1990).
Application of these principles here compels the conclusion that the trial court did not abuse its discretion in denying defendant's motion for a severance in this case. Defendant, Murdock and Davis were charged with drug-related offenses that stem from the same incident, namely the roadside discovery of cocaine in the vehicle driven by defendant on November 4, 1990. The same evidence was needed to prosecute the three. Defendant, Murdock *152 and Davis did not present mutually exclusive or antagonistic defenses requiring a severance.

III.
We are also satisfied that the trial court properly denied defendant's motion to suppress the brick of cocaine seized from Davis' pocketbook during the roadside stop. Defendant claims that the search of the pocketbook was an illegal, warrantless search and, as such, the cocaine seized should not have been admitted. We disagree and affirm the denial of the motion to suppress substantially for the reasons expressed by Judge Sullivan in his oral opinion of May 5, 1992.
Additionally, under both the Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution, a warrantless search and seizure is prima facie invalid and can be justified only if it falls within a specific exception. State v. Demeter, 124 N.J. 374, 379-80, 590 A.2d 1179 (1991); State v. Patino, 83 N.J. 1, 7, 414 A.2d 1327 (1980). In order to deter misconduct by governmental actors, material seized in violation of an individual's constitutional rights may not be used as evidence against that individual in the State's case-in-chief. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090, reh'g denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961).
Generally, the police may not make a random stop of an automobile, nor may the State use evidence seized while a driver was detained during an unjustified stop. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); State v. Coccomo, 177 N.J. Super. 575, 579, 427 A.2d 131 (Law Div. 1980). However, where the officer has an articulable and reasonable suspicion that criminal activity is afoot, the vehicle and the occupants are subject to an investigatory detention. Delaware v. Prouse, supra, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at *153 673; State v. Barcia, 235 N.J. Super. 311, 316, 562 A.2d 246 (App.Div. 1989).
A determination of whether an articulable and reasonable suspicion of criminal activity exists must be based on the totality of the circumstances. State v. Davis, 104 N.J. 490, 501, 517 A.2d 859 (1986). The court should consider that a trained police "officer draws inferences and makes deductions ... that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Ibid. (quotation omitted); State v. Gray, 59 N.J. 563, 567-68, 285 A.2d 1 (1971) ("Events which would go unnoticed by a layman ofttimes serve as an indication to the trained eye that something amiss might be taking place or is about to take place."). With respect to developing reasonable suspicion about motorists, our Supreme Court has recognized:
Obviously there are some cases in which "furtive" movements or gestures by a motorist, accompanied by other circumstances, will ripen into a reasonable suspicion that the person may be armed and dangerous or probable cause to believe that the person possesses criminal contraband. Examples of such factors are additional evasive action, lying to the police, the presence of other incriminating information about the motorist or occupants of the car, the absence of identification, and even the lateness of the hour. [State v. Lund, 119 N.J. 35, 48, 573 A.2d 1376 (1990)].
Thus, furtive movements and nervous appearance can establish the basis for a protective search. Id. at 46, 573 A.2d 1376.
Once a proper investigatory detention has occurred, a simple observation into the interior of an automobile by a police officer located outside the automobile is not a "search" under the United States or New Jersey Constitutions. State v. Foley, 218 N.J. Super. 210, 215, 527 A.2d 482 (App.Div. 1987) (citing, inter alia, Texas v. Brown, 460 U.S. 730, 739-40, 103 S.Ct. 1535, 1541-42, 75 L.Ed.2d 502, 511-13 (1983)). "There is no legitimate expectation of privacy ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Id., 218 N.J. Super. at 216, 527 A.2d 482 (quoting Texas v. Brown, supra, 460 U.S. at 740, 103 S.Ct. at 1542, 75 L.Ed.2d at 513); see also *154 State v. Smith, 37 N.J. 481, 496-97, 181 A.2d 761 (1962), cert. denied, 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963). Thus, the viewing of objects which are in plain view within an automobile does not constitute an unlawful search.
Furthermore, where an officer fears for his or her safety, the officer may be justified in taking action to ensure that the suspect does not engage in harmful conduct. See, e.g., State v. Otero, 245 N.J. Super. 83, 92, 584 A.2d 260 (App.Div. 1990) (officers justified in requesting that occupants of vehicle place their hands on the dashboard); see also Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889, 911 (1968) (pat-down of suspect is permissible when officer is in fear of danger). The test is "whether a reasonably prudent police officer in the circumstances presented would be warranted in the belief that his safety was in danger." State v. Kennedy, 134 N.J. Super. 454, 458, 341 A.2d 685 (App.Div. 1975).
Here, the troopers observed the vehicle which defendant was driving travelling at approximately seventy-five miles per hour in a fifty-five mile-per-hour zone. The vehicle slowed down abruptly and cut across four lanes of traffic into the right lane. The trooper's observation of this conduct justified their investigatory roadside stop and detention. After stopping, defendant immediately stepped out of his vehicle. Defendant appeared nervous, denied speeding, and explained that the front passenger was his girlfriend and the rear passenger was his brother. Defendant first explained that they had been visiting relatives in Queens, New York, but later gave a conflicting story, claiming that he had been visiting relatives in Brooklyn and that Davis was his wife.
In response to the trooper's inquiry regarding the day the vehicle was rented and the fact that only Davis and her husband were permitted to drive the vehicle, defendant became confused, nervous and belligerent. Defendant also continually looked back at the passengers in the vehicle. The troopers noticed that defendant became progressively more upset, threw his arms in the *155 air, and refused to remain seated on the hood of the car when asked. At one point defendant jumped off the hood of the car and engaged one of the troopers in a fistfight. Murdock, however, cooperated and did not become violent. Murdock told the troopers that they were coming from the Bronx, which was the third version of the story presented to the troopers.
Amidst this confusion, Trooper Dunn observed the front passenger, Davis, reaching into her pocketbook "with both hands ... as if she was reaching for something." The trooper stated that Davis was "quickly shuffling through her pocketbook." Trooper Dunn, fearing that Davis might be reaching for a weapon, rushed to the passenger door, opened it and grabbed the pocketbook. The trial court accepted the fact that the trooper observed, from the outside of the pocketbook, a rock-like substance in a plastic bag which he believed to be cocaine. The troopers then placed the three defendants under arrest.
Trooper Dunn observed the cocaine "in plain view" while looking at the pocketbook. Thus, the trooper did not conduct an unlawful search and the cocaine was properly admitted into evidence. The further search of the pocketbook which took place at police headquarters and which revealed the smaller amount of cocaine wrapped in a paper towel was a search incident to a lawful arrest and, therefore, it also was not unconstitutional.
Beyond this, the circumstances of the roadside stop were sufficient to warrant the trooper's conclusion that his safety was in danger. Davis' reaching into her pocketbook amidst the confusion and with defendant continually glancing at her was a "furtive" movement, as contemplated by State v. Lund, supra, 119 N.J. 35, 48, 573 A.2d 1376 (1990). Other factors recognized by Lund were also present, such as defendant's evasive action, lying to the police, the late hour and the rental car agreement in Davis' name while defendant was driving. Thus, Trooper Dunn had a reasonable suspicion sufficient to warrant grabbing the pocketbook and engaging in a protective search. Trooper Dunn's looking into Davis' pocketbook plainly falls within the proper scope of a protective *156 search justified by reasonable suspicion under State v. Lund, supra, because Trooper Dunn suspected that a weapon was in the pocketbook. In this regard, the language of Chief Justice Hughes in State in the Interest of H.B., 75 N.J. 243, 252, 381 A.2d 759 (1977), is still most appropriate and worthy of repeating:
While this Court has not been reticent in going beyond naked constitutional right as defined by the United States Supreme Court, we think we should not so act in the circumstances here. To do so in the face of the violent climate of the times and the universal threat of handguns, particularly to the policeman as he carries out official duties, would seem foolhardy and wrong, and needlessly expose society and the police community to serious risk of death or injury.

IV.
Defendant further contends that the trial court erred in failing to grant his motion for acquittal at the end of the State's case with respect to the charges of possession of cocaine and possession of cocaine with intent to distribute. We disagree.
A motion for a judgment of acquittal is governed by R. 3:18-1, which provides:
At the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction. A defendant may offer evidence after denial of his motion for judgment of acquittal made at the close of the State's case without having reserved the right.
In State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967), our Supreme Court set forth the standard to be applied when determining a motion for judgment of acquittal:
Treating first of the motion at the conclusion of the prosecution's evidence, the broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of the charge involved. R.R. 3:7-6. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. State v. Fiorello, 36 N.J. 80, pp. 90-91 [174 A.2d 900] (1961), certiorari denied, 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962).
See also State v. Martinez, 97 N.J. 567, 571-72, 483 A.2d 117 (1984); State v. Franco, 153 N.J. Super. 428, 432-33, 379 A.2d 1292 *157 (App.Div. 1977); State v. Gora, 148 N.J. Super. 582, 595-96, 372 A.2d 1335 (App.Div.), certif. denied, 74 N.J. 275, 377 A.2d 679 (1977); State v. South, 136 N.J. Super. 402, 410, 346 A.2d 437 (App.Div. 1975), certif. denied, 69 N.J. 387, 354 A.2d 315 (1976); State v. Gaines, 135 N.J. Super. 240, 247-48, 343 A.2d 118 (App. Div. 1975), aff'd o.b., 75 N.J. 83, 379 A.2d 1275 (1977).
When reviewing a trial court's determination of a motion to acquit, we must "consider the State's proofs in the light of the [Reyes] standard and ... determine therefrom how the motion should have been decided." State v. Gora, supra, 148 N.J. Super. at 596, 372 A.2d 1335; State v. Gaines, supra, 135 N.J. Super. at 248, 343 A.2d 118.
Applying these settled principles here, we are thoroughly convinced that the record contains sufficient credible evidence from which a reasonable jury could find defendant guilty beyond a reasonable doubt of possession of cocaine and possession of cocaine with intent to distribute. Defendant's conduct of exiting the vehicle without being told to do so, acting nervously, constantly glaring at the other passengers, sweating, pacing and excessively becoming belligerent and eventually assaulting the trooper gave rise to a permissible inference of defendant's guilty knowledge of the presence of drugs. Stated simply, this conduct was a classic sign of his involvement with the drug-related activity being carried on by the passenger, Davis. The proofs clearly distinguish this case from State v. Shipp, 216 N.J. Super. 662, 524 A.2d 864 (App.Div. 1987), and are more closely analogous to State v. Palacio, 111 N.J. 543, 545 A.2d 764 (1988). Moreover, in our view, the jury verdict was not a manifest denial of justice under the law. See State v. Carter, 91 N.J. 86, 96, 449 A.2d 1280 (1982); State v. Sims, 65 N.J. 359, 373-74, 322 A.2d 809 (1974). See also R. 2:10-1.

V.
Finally, we are satisfied that the sentences imposed upon defendant were neither illegal nor excessive. The sentences complied *158 with the provisions of the New Jersey Code of Criminal Justice and resulted from the trial court's thorough and careful balancing of the aggravating factors against the one mitigating factor. The totality of the aggravating factors substantially outweigh the one mitigating factor and the trial court's findings in this regard are amply supported by the record.
The trial court properly imposed a mandatory minimum term upon the fifteen-year term imposed for possession of cocaine with intent to distribute under the First Count. N.J.S.A. 2C:35-5b(1) mandates that, except upon a waiver of the mandatory minimum under N.J.S.A. 2C:35-12,
[t]he term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, during which the defendant shall be ineligible for parole.
The mandatory minimum was not waived under N.J.S.A. 2C:35-12 and, therefore, the trial court had no alternative but to impose a minimum term. The trial court imposed a one-third minimum term, which is the lowest permissible parole ineligibility term under the statute.
In sum, we are satisfied that the fifteen-year term with a five-year period of parole ineligibility imposed upon defendant for possession of cocaine within intent to distribute under the First Count, the concurrent one-year term imposed upon defendant for resisting arrest under the Fifth Count and the concurrent four-year term imposed upon defendant for aggravated assault under the Sixth Count are unassailable. The sentences are neither manifestly excessive nor unduly punitive. They do not represent a miscarriage of justice or shock the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-88, 393-94, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984).

VI.
Accordingly, the judgment of conviction and order for commitment under review are affirmed.
NOTES
[1] The trial court granted the motion of defendant Wayne S. Murdock for a judgment of acquittal as to all charges against him. The jury convicted co-defendant Valecia A. Davis of possession of cocaine with intent to distribute under the First Count and possession of cocaine under the Second Count.