**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1729-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TONY CANTY, a/k/a
TONY R. CANTY, TONY
LEE CANTY, TONY L.
CANTY REDDICK,
TONY REDDING, TONY
RIDDICK, JASON JAMES,
and TONY L. REDDICK,

     Defendant-Appellant.

_____

Submitted April 10, 2024 – Decided April 22, 2024

Before Judges Firko and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 07-12-1018 and 07-12-1019.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

William C. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tony Canty appeals from the trial court's order denying his petition for post-conviction relief (PCR) based on ineffective assistance of trial and appellate counsel without an evidentiary hearing. Defendant collaterally challenges his conviction of multiple counts of first-degree robbery and weapons offenses. He was ultimately sentenced, after remand, to an aggregate thirty-five-year term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On appeal, defendant raises the following points for our consideration:

POINT I

DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE HIS CASE PRIOR TO TRIAL.

A. APPLICABLE LAW.

B. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY INVESTIGATE DEFENDANT'S CASE WHICH RESULTED IN THE JURY BEING TAINTED BY EVIDENCE WRONGFULLY ENTERED AGAINST HIS INTEREST FOR THE MAJORITY OF THE TRIAL.

2                                                    A-1729-22

POINT II

DEFENDANT WAS PREJUDICED BY APPELLATE COUNSEL'S FAILURE TO CHALLENGE THE WRONGFUL DENIAL OF HIS SEVERANCE MOTION BECAUSE A JOINT TRIAL PREDICATED ANY PLEA OFFER TO INCLUDE TESTIMONY AGAINST HIS CO-DEFENDANT RESULTING IN DEFENDANT BEING FORCED TO OFFER FALSE TESTIMONY (Not Raised Below).

POINT III

DEFENDANT'S PETITION FOR [PCR] SHOULD NOT BE TIME[-]BARRED BECAUSE DEFENDANT'S DELAY IN FILING WAS DUE TO EXCUSABLE NEGLECT AND THE INTERESTS OF JUSTICE REQUIRE HIS CLAIMS BE HEARD.

We affirm.

I.

To resolve the issues raised in this PCR appeal, we need not discuss the trial evidence, which is detailed in our unpublished opinion on defendant's direct appeal. See State v. Canty, Nos. A-2842-10, A-3813-10 (App. Div. Aug. 12, 2013). We briefly summarize the facts to give context to this appeal. The State presented evidence that one night, defendant, co-defendant Jaquan L. Lee, and a third individual robbed three groups of persons at gunpoint. One of Lee's former girlfriends testified that she drove defendant, Lee, and others from one robbery to another. A second former girlfriend of Lee's testified that she loaned

3

Lee the car, which matched the victims' description, including the license plate number.

Defendant was arrested when the vehicle was stopped, and the police approached. Inside the car were various items taken in the robberies along with two sawed-off shotguns armed with shells. Two of the victims identified defendant in court as one of the perpetrators with a sawed-off shotgun. Defendant matched the physical description the victims gave, including wearing a black hoodie and a knotted blue bandana, with a knot in the back of his neck and the cloth in front, where it could be pulled up to cover his face.

In addition to this evidence, the State disclosed prior to trial that defendant's DNA was found on one of the stolen cell phones and a Detroit Lions jacket that police seized from the vehicle. However, during trial, as the State was near the end of its case, it came to light that, as a result of a transposed number, the State's DNA report had mistakenly identified defendant as the DNA contributor when in fact, the DNA on the items belonged to Lee. Defendant was excluded as a DNA contributor on every item of evidence in which DNA was sampled.

Lee's trial counsel asked the trial court to exclude the DNA evidence, or declare a mistrial, arguing it prejudiced her defense. Defendant's counsel argued

A-1729-22

the mistake is probative evidence and was helpful to defendant. Following argument, the trial court allowed the State's DNA expert to testify that buccal samples were taken from both defendants; the State tested items that were likely to yield good DNA samples; and defendant was excluded from the DNA samples taken from the cell phone and jacket found in the vehicle. The DNA expert did not testify as to whether the DNA samples matched Lee's DNA.

On July 22, 2021, defendant filed a pro se petition for PCR alleging ineffective assistance of trial counsel. Defendant claimed it "[c]ame to his attention from the Office of the Public Defender PCR unit that the State filed a Giglio/Brady[1] letter regarding a witness in [his] case." Appointed PCR counsel

---

[1] In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates [constitutional principles of] due process . . . ." 373 U.S. 83, 87 (1963).

> "[T]o determine whether a Brady violation has occurred: (1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case."
> State v. Brown, 236 N.J. 497, 518 (2019).

In Giglio v. United States, the Supreme Court extended Brady's scope to include material evidence that would bear upon the credibility of the State's witnesses. 405 U.S. 150, 153-54 (1972). The Court cautioned, however, "[w]e do not . . . automatically require a new trial whenever 'a combing of the prosecutors' files

filed an amended PCR petition[2] alleging trial counsel was ineffective for his failure to: (1) conduct an adequate investigation; (2) negotiate a plea that was not contingent on the cooperation of co-defendant Lee; and (3) secure a severance prior to trial.

After hearing argument, the PCR court rendered an oral opinion denying defendant's petition without an evidentiary hearing. The PCR court concluded defendant's petition was time-barred under Rule 3:22-12(a) because it was filed more than five years following entry of his judgment of conviction (JOC). The PCR court noted the Rule in part permits the filing of a PCR petition beyond the

---

after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .'" Id. at 154 (quoting United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968)). Rule 3:13-3(b)(1) codifies the standards set forth in Brady and Giglio in our State:

> "[E]vidence is material if there is a 'reasonable probability' that timely production of the withheld evidence would have led to a different result at trial." Brown, 236 N.J. at 520 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)). "In deciding materiality, 'we examine the circumstances under which the nondisclosure arose' and '[t]he significance of a nondisclosure in the context of the entire record.'" Id. at 518-19 (alteration in original) (quoting State v. Marshall, 123 N.J. 1, 199-200 (1991)).

[2] The amended PCR petition is not contained in the appendices, but its contents were summarized by the trial court in its decision.

five-year deadline where a defendant demonstrates excusable neglect for the late filing but found defendant failed to assert any explanation to establish excusable neglect. The PCR court also determined the late filing of the petition would prejudice the State if the case were retried because crucial evidence and witnesses "are likely gone and the memories of the incident have almost certainly dimmed if they have not been completely forgotten," and adhering to the time-bar prevents uncertainty related to a re-litigation of the matter.

Although the PCR court concluded defendant's petition was time-barred, it also addressed the merits of defendant's arguments in his pro se and amended petitions: (1) trial counsel's failure to investigate the claim was not supported by specified competent evidence that "would have or could have altered the verdict"; (2) the failure to negotiate a plea also failed because defendant did not present evidence that trial counsel impaired the plea negotiations; and (3) trial counsel's failure to file a severance motion should have been made on the direct appeal.

The PCR court also denied defendant's petition for a new trial based on newly discovered evidence, finding the evidence defendant referred to was not material to his defense, and therefore, would not have been considered as exculpatory. The PCR court reasoned that even if the proffered evidence was

7

used to strike the testimony of a State's witness, it would not have affected the outcome of the trial. A memorializing order was entered. This appeal followed.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. Ibid. To sustain this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

8

different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

When assessing Strickland's first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 669. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Thus, a trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second prong, the defendant must show "the deficient performance prejudiced the defense." Id. at 687. That is, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

A-1729-22

Claims of ineffective assistance of appellate counsel must assert that errors existed at the trial level that could have been ascertained by appellate counsel's review of the record, but were never raised as issues on appeal. See State v. Echols, 199 N.J. 344, 359-61 (2009). To obtain a new trial based on ineffective assistance of appellate counsel, it must be established that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. See id. at 361. Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either, that no error had occurred or that it was harmless. State v. Reyes, 140 N.J. 344, 365 (1995); see also State v. Harris, 181 N.J. 391, 499 (2004).

Further, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c); see State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. The mere raising

of a claim for PCR does not entitle the defendant to an evidentiary hearing. Cummings, 321 N.J. Super. at 170. Rather, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted).

The PCR court should grant an evidentiary hearing only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)).

"Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); see also State v. Nash, 212 N.J. 518, 540-41 (2013). However, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 N.J. at 157-58).

Rule 3:22-12 prescribes the time limitations for filing first petitions for PCR. Pertinent here, the Rule generally provides that "no petition shall be filed . . . more than [five] years after the date of the entry . . . of the judgment of conviction (JOC) that is being challenged." R. 3:22-12(a)(1).[3]

There are two exceptions to the five-year time limitation. First, the five-year time limitation does not apply where the PCR petition "alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if . . . defendant's factual assertions were found to be true enforcement of the time-bar would result in a fundamental injustice." R. 3:22-12(a)(1)(A). Second, the five-year limitation does not apply where the PCR petition "alleges a claim for relief as set forth in [Rule 3:22-12(a)(2)(A) or (a)(2)(B)] and is filed within the one-year period set forth in [Rule 3:22-12(a)(2)]." R. 3:22-12(a)(1)(B).

Defendant filed his petition on July 22, 2021, more than five years after the JOC. He did not contend one of the exceptions applied. For the first time on appeal, defendant asserts his petition should not be time-barred because there

---

[3] Defendant's original JOC was entered on September 7, 2010. The amended JOC was entered on September 20, 2013. In State v. Dugan, we held that a defendant must file his petition "within five years of whatever judicial action he is attacking." 289 N.J. Super. 15, 19-21 (App. Div. 1996).

is no record that he was advised of his PCR rights and applicable filing time limits, which he claims constitutes excusable neglect under the first Rule 3:22-12 exception.

"Excusable neglect provides the means for a court to address and correct a criminal judgment where 'adherence to it would result in an injustice.'" State v. Norman, 405 N.J. Super. 145, 159 (App. Div. 2009) (quoting State v. McQuaid, 147 N.J. 464, 485 (1997)). To establish "excusable neglect" under Rule 3:22-12(a)(1)(A), a defendant must demonstrate "more than simply providing a plausible explanation for a failure to file a timely PCR petition." Ibid.

In assessing whether a defendant has demonstrated excusable neglect, a court must weigh "the extent of the delay," "the purposes advanced by the five-year rule," "the nature of defendant's claim[,] and the potential harm . . . realized" by defendant, State v. Murray, 162 N.J. 240, 251 (2000) (citing Mitchell, 126 N.J. at 580), as well as the "cause of the delay, the prejudice to the State, and the importance of the [defendant's] claim in determining whether there has been an 'injustice' sufficient to relax the time limits," Norman, 405 N.J. Super. at 159 (quoting State v. Afanador, 151 N.J. 41, 52 (1997)).

"Ignorance of the law and rules of court does not qualify as excusable neglect," State v. Merola, 365 N.J. Super. 203, 218 (Law Div. 2002), aff'd, 365 N.J. Super. 82 (App. Div. 2003) (citing Murray, 162 N.J. at 246), and a defendant's decision to "remain intentionally ignorant of . . . legal consequences" does not support a finding of excusable neglect, State v. Brown, 455 N.J. Super. 460, 471 (App. Div. 2018).

Measured against these principles, defendant's petition and amended petition—filed eight years after his conviction—do not support a finding of excusable neglect. As we have explained, defendant failed to assert any explanation to establish excusable neglect under Rule 3:22-12(a)(1). Defendant makes a bald assertion that he was unaware and uninformed of his right to file a PCR petition, but as the PCR court aptly noted, defendant failed to submit a certification or affidavit in support of his claim. More than simply a "plausible explanation" is required, as determined by the PCR court.

Moreover, even considering defendant's excusable neglect argument, which was not raised before the PCR court,[4] there is still not a sufficient basis

---

[4] It is well settled that we will not consider questions or issues not raised at trial unless the questions raised pertain to the trial court's jurisdiction or concern a matter of great public interest. State v. Robinson, 200 N.J. 1, 20 (2009). But this "limitation on the scope of appellate review is not absolute." Ibid. "[O]ur

shown to relax the time restraints because of the severe prejudice to the State. See Brewster, 429 N.J. Super. at 400 ("If excusable neglect for late filing of a petition is equated with incorrect or incomplete advice, long-convicted defendants might routinely claim they did not learn about the deficiencies in counsel's advice on a variety of topics until after the five-year limitation period had run."). The crimes occurred in 2007, almost seventeen years ago, and memories of witnesses, if they can even be located, have likely faded or are completely forgotten. The goal of Rule 3:22-12(a)(1) is achieved to ensure the finality of this matter and any uncertainty with regard to a potential re-trial. The PCR court was correct in its analysis.

## III.

Defendant next argues his trial counsel was ineffective for failing to investigate his case. In his PCR petitions, defendant did not specify any facts in support of this claim and only broadly claimed trial counsel was ineffective

---

trial and appellate courts are empowered . . . to acknowledge and address trial error if it is 'of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting R. 1:7-5). "Further, our appellate courts retain the inherent authority to 'notice plain error not brought to the attention of the trial court[,]' provided it is 'in the interests of justice' to do so." Ibid. (quoting R. 2:10-2).

for not investigating his case, and was "unprepared." Accordingly, the PCR court rejected this claim, finding defendant "failed to provide any specific and competent evidence that if an investigation was properly performed, it would have revealed evidence that would have or could have altered the verdict." Therefore, defendant's argument is flawed and procedurally barred.

On appeal, defendant presents the argument for the first time that trial counsel was ineffective for failing to investigate the State's proofs against him relative to the DNA evidence and "led to the erroneous belief" he had to defend the "erroneous evidence" linking him to the crimes. Defendant argues he was prejudiced by the incorrect DNA evidence, which his trial counsel "failed to uncover" before trial, and that trial counsel should not have relied on the expert DNA report as written. Defendant further avers that no curative instruction could have corrected the injustice that occurred late in the proceedings.

Defendant failed to raise this argument in his PCR petitions, and we therefore reject it. Robinson, 200 N.J. at 20. The DNA mix-up caused by the transposition of identifying numbers for defendant and Lee did not undermine the defense strategy. While the error was discovered nine days into trial, defendant presents no evidence that the error could have been found by his trial counsel before the trial started. Moreover, even though it was initially thought

16                                                                    A-1729-22

that defendant's DNA was found inside the car, trial counsel effectively argued he was not connected to the robberies beyond merely standing near the legally parked car used in the crimes, and he did not have any proceeds on his person. And, it was always known that defendant's fingerprints were not discovered anywhere on the car or on any of the items inside the car. Thus, the defense strategy was not prejudiced by a failure to investigate the DNA evidence.

The theory of defendant's case did not have to be revisited as he contends. In fact, the State's DNA expert ultimately testified that defendant's DNA was not found in the car, which cured any potential prejudice because it corroborated trial counsel's claims that defendant was not forensically linked to the car. And, trial counsel's failure to seek a mistrial did not result in prejudice because co-defendant Lee's attorney requested a mistrial, which was denied. We are convinced defendant was not denied his constitutional right to effective assistance of trial counsel under either Strickland/Fritz prong.

## IV.

Finally, defendant argues that his appellate counsel was ineffective for failing to challenge the wrongful denial of his severance motion because a joint trial predicated any plea offer to include testimony against co-defendant Lee resulting in defendant offering "false" testimony. Again, we disagree.

17

Defendant raises this issue for the first time on appeal and is procedurally barred. Robinson, 200 N.J. at 20. However, we will address defendant's argument.

"Two or more defendants may be tried jointly 'if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" State v. Brown, 170 N.J. 138, 159-60 (2001) (quoting R. 3:7-7). Courts generally prefer to try co-defendants jointly, "particularly when 'much of the same evidence is needed to prosecute each defendant.'" Id. at 160 (quoting State v. Brown, 118 N.J. 595, 605 (1990)). "That preference is guided by a need for judicial efficiency, to accommodate witnesses and victims, to avoid inconsistent verdicts, and to facilitate a more accurate assessment of relative culpability." Ibid.

A single joint trial, however, may not take place at the expense of a defendant's right to a fair trial. State v. Sanchez, 143 N.J. 273, 290 (1996). When considering a motion for severance, a trial court should "balance the potential prejudice to defendant's due process rights against the State's interest in judicial efficiency." Brown, 118 N.J. at 605 (quoting State v. Coleman, 46 N.J. 16, 24 (1965)). Trial courts apply a rigorous test for granting severance. Brown, 170 N.J. at 160. A mere claim of prejudice is insufficient to support a

motion to sever. State v. Moore, 113 N.J. 239, 274 (1988). A defendant does not have the right to severance simply because he or she believes a separate trial "would offer defendant a better chance of acquittal." State v. Johnson, 274 N.J. Super. 137, 151 (App. Div. 1994) (quoting State v. Morales, 138 N.J. Super. 225, 231 (App. Div. 1975)).

Our review of a motion to sever is limited. The decision to sever rests within the trial court's discretion. State v. Weaver, 219 N.J. 131, 149 (2014). We defer to the trial court's decision on a severance motion unless it constitutes an abuse of discretion. Ibid.

Here, defendant moved to sever based on potential prejudice arising from gang affiliation. The trial court considered that argument in denying the motion to sever reasoning such a risk could be cured by a jury instruction. Subsequently, the trial court ruled that the witnesses would not be permitted to mention gang affiliation. On appeal, defendant is not claiming that the denial prejudiced defendant because of gang affiliation. Instead, defendant claims: (1) the motion to sever should have been granted because there the evidence did not tie him to the crimes; and (2) he was prejudiced by being tried with Lee.

However, the record does tie defendant to the crimes because: (1) victims from the robberies had similar descriptions of defendant's appearance—wearing

19

a black hoodie, jeans, and a blue bandana; (2) Sade Ingram identified defendant as the person she picked up and who committed the robberies with Lee; and (3) the police observed defendant in a group with Lee and Ingram near the car shortly after the third robbery and apprehended him.  Therefore, we are satisfied that the severance motion was properly denied because the record sufficiently tied defendant to the crimes, and he fails to establish the prima facie elements—deficient performance and prejudice resulting from the deficiency—that his appellate counsel was ineffective for not raising this issue on appeal.

Moreover, defendant's claim that joinder prevented him from accepting the State's plea offer without having to testify against Lee and without the offer being contingent upon Lee's acceptance is also unsupported by the record.  The plea offer was predicated on each party testifying against their respective co-defendant, which we held Lee recognized as a continuing requirement of the pre-trial plea offer after the DNA mix-up.  State v. Lee, No. 3209-17 (App. Div. June 1, 2020) (slip op. 6) ("[Lee] insisted he would have accepted the plea offer, including testifying against Canty, if necessary.").

Given the plea offer was always contingent, we noted "[w]hen co-defendant Lee rejected the offer, the State was under no obligation to extend a separate or different offer to defendant.  In essence, because Lee did not want to

accept the terms of the plea agreement, it resulted in the plea not being available to . . . defendant." Further, defendant's claim that the plea offer required him to give "false" testimony is also negated by the record because, for the same reasons, the record tied defendant to the crimes, he was also tied to Lee and therefore could not claim to not know Lee, or have been near the car, or committed the robberies.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1729-22